**AREA REAL ESTATE ASSOCIATES, INC., Appellant,**

v.

**CITY OF RAYMORE, Missouri, Respondent.**

**No. WD 36071.**

Missouri Court of Appeals, Western District.

Aug. 20, 1985.

Rehearing Denied Oct. 1, 1985.

Application to Transfer Denied Nov. 21, 1985.

Elvin S. Douglas, Jr., Crouch, Crouch, Spangler & Douglas, Harrisonville, for appellant.

David E. Martin, Martin & Henry, Kansas City, for respondent.

Before PRITCHARD, P.J., and SHANGLER and DIXON, JJ.

DIXON, Judge.

Plaintiff appeals a jury verdict for defendant City in an inverse condemnation action. The determinative issue is plaintiff's assertion that the City's affirmative converse instruction was without evidentiary support. The verdict and judgment are reversed, and the cause is remanded for a new trial.

The City embarked upon a plan for providing sewer services for its residents. In May 1978, the City sent a letter to plaintiff advising it of the City's need for sewer easements, and enclosed a right-of-way sewer easement form, a legal description of the affected property, and a map showing the location of the proposed sewer on plaintiff's property. The map shows the sewer line entering plaintiff's property from the east at about the center of the east property line, then going west a few feet to a manhole, where it stops. Plaintiff executed the easement form which was recorded without the map. The sewer improvement, constructed during the summer of 1979, entailed cutting a hole 6 × 10 feet and installing a manhole cover. In July 1980, plaintiff's neighbor to the south, Boneless Beef, contacted plaintiff regarding the possibility of acquiring a private easement from plaintiff to connect Boneless Beef's facility to the sewer manhole in front of plaintiff's property. This request was necessitated because the sewer line intended for Boneless Beef's use was at an elevation that prevented its use. Plaintiff refused the request.

A month later, the City's civil engineer, Tom F. Baker, contacted plaintiff, and in their conversation, it was revealed that the City intended to run an additional sewer line diagonally across plaintiff's property from the original 1979 manhole to a manhole to be constructed on Boneless Beef's property. Baker testified at trial that the Boneless Beef line was an addition to the original plan, one that "was never contemplated and never talked about until August of '80." The map that plaintiff saw and which was attached to the easement that plaintiff signed did not show this additional line.

The easement document granted to the City "a perpetual easement with the right to survey, erect, construct, install, and lay, and thereafter use, operate, inspect, repair, maintain, replace and remove a sewer line over, across and through the land of the GRANTOR, * * *." The document described plaintiff's entire property. In addition to the general grant of an easement, the document contained the following language: "[T]he permanent easement shall be 20 feet in width, the center line thereof to be located along said pipe as installed construction width to be as required."

The City then began to install a sewer line across the corner of plaintiff's property, from the manhole originally on plaintiff's property, a distance of some 90 feet, to the property of the adjacent landowner. Plaintiff filed suit, and the cause was submitted to the jury under plaintiff's theory of inverse condemnation.

Plaintiff asserts the trial court erred in submitting instruction No. 10, which reads as follows:

> Your verdict must be for defendant if you believe plaintiff granted defendant an easement to construct and maintain the sewer line to serve Boneless Beef mentioned in evidence on plaintiff's property.

Plaintiff argues no evidence supports the submission. The instruction provides that, if plaintiff gave an easement, the verdict must be for defendant. The only evidence of an easement was that shown above. No other evidence supports a grant of easement by plaintiff. It is, therefore, implicit in the submission of Instruction No. 10 that the written easement under the facts outlined above could constitute an easement for the later installation of the line to serve Boneless Beef. The trial court necessarily considered the easement to permit, as a matter of law, such later installation. If, as a matter of law, the only evidence of easement does not permit the later installation, the instruction was erroneously given.

In *Edward Runge Land Co. v. Busch*, 594 S.W.2d 647, 649 (Mo.App.1980), the easement in dispute read as follows:

> The grantor expressly reserves to himself, his heirs and assigns the right to drain the water from his lands lying south of the lands above described and conveyed over and upon the lands hereby conveyed at such points as he may think best to drain his lands effectively and well.

The court affirmed the grant of an injunction permitting the plaintiffs to continue to use a ditch which had been established for many years under this easement. The court held that, where no definite location is given as to an easement's location the course over which it is to be exercised can be fixed in either of two ways, that is, by express agreement or by a selection that can be inferred by proof of the use of a particular way.

*Id.*, at 650.

The *Runge* court had earlier referred to *Bolomey v. Houchins*, 227 S.W.2d 752 (Mo. App.1950), for the general rule that:

> Where (as in this case) an easement in land is created in general terms without giving its definite location and description, the course over which the right is to be exercised may be subsequently fixed by the express agreement of the parties, or a selection may be inferred within the boundaries of the land over which the right is granted by proof of the use of a particular way on the part of the grantee or owner of the dominant estate along with the acquiescence of the grantor or owner of the servient estate. *Massa v. Union Electric Light & Power Co.*, Mo. App., 50 S.W.2d 714; *Geismann v. Trish*, 163 Mo.App. 308, 143 S.W. 876; *Davis v. Watson*, 89 Mo.App. 15; 28 C.J.S., Easements, § 82; 17 Am.Jur., Easements, sec. 86.

*Id.*, at 755.

A much more recent case precisely parallels the instant case. In *Keener v. Black River Electric Co-Operative*, 469 S.W.2d 657 (Mo.App.1971), the plaintiffs brought an action against the electric cooperative for trespass and for the cutting of trees. The defendant electric utility filed an answer, asserting it had a blanket easement covering the entire property in question. The evidence showed that the plaintiffs had sought a connection from the electric utility to serve their property with electricity and had, in connection with that request, executed a blanket easement. The utility then extended the electricity onto the plaintiffs' property. About a year later, the electric utility entered the plaintiffs' land and extended the line across the plaintiffs' property, installing anchors and another pole. The trees were cut to provide the right-of-way for the extension of the line. A judgment was rendered in favor of the

**464**

plaintiffs and the defendants appealed, asserting the court erred in refusing to give an instruction which directed a verdict for the defendant, if the jury found that the plaintiffs had signed the easement mentioned in evidence. The court held, in determining whether the instruction should have been given, that it would give the easement the same meaning and intent as did the parties. Based on the facts, the court held further, that the easement was intended only for the defendant's use in the original construction by placing a pole on and extending service to the plaintiffs' property. The instruction was properly refused, since, as a matter of law, the defendant had no easement to extend the line. The court noted that the trial court had tried the case on the theory of inverse condemnation, but that the plaintiffs had not appealed from a judgment based on that theory and a damage instruction for before and after value. The court, therefore, affirmed the judgment, indicating that if the plaintiffs had appealed, it would have reversed the judgment because the plaintiffs were entitled to recover triple the value of the trees under § 537.340 RSMo 1978.

Not the slightest doubt exists under this evidence, that the broad general easement over and across the plaintiff's land was by the parties' action, and their acknowledged intent converted it into an easement over a specific portion of the plaintiff's land, to-wit: the pipe and the manhole installed in 1979. To hold otherwise would permit any utility, which obtained such a general easement and installed some facility, to return and make any extensions it desired from that easement, as long as they were over and across the plaintiff's property. As a matter of law, under the evidence in this case, the City had no easement right for the construction of the additional line for the Boneless Beef property. Instruction No. 10 was erroneously given and amounted to a misdirection of the jury. The verdict and judgment are reversed and the cause remanded to the circuit court for a new trial.

SHANGLER, J., concurs.

PRITCHARD, P.J., dissents in separate dissenting opinion.

PRITCHARD, Presiding Judge, dissenting.

The majority opinion purports to hold *as a matter of law* that the City had no easement right to construct an additional line to the Boneless Beef property [as a defense to plaintiff's claim for damages in Count III of its petition in the nature of inverse condemnation occasioned by defendant city's entry upon, installation and construction of a sewer line in and over a portion of plaintiff's property, done without permission as alleged]. In this holding, I am convinced, the majority opinion errs, and I therefore dissent. Upon the issues submitted on plaintiff's claim, and the grant of the easement submitted by defendant in Instruction No. 10, the jury returned a verdict for the defendant.

In May, 1978, the City sent a letter to plaintiff advising it of its need for sewer easements, enclosing a right-of-way sewer easement form, a legal description of the affected property, and a map showing the location of sewers and manholes on individual properties throughout the city as they were affected. The map, an aerial photograph, shows the sewer line going onto plaintiff's property from the east across north-south Highway 58, to about the center of plaintiff's east line, then to the west a few feet to a manhole, where it stopped. The easement document executed by plaintiff granted to the City "a perpetual easement with the right to survey, erect, construct, install, and lay, and thereafter use, operate, inspect, repair, maintain, replace and remove a sewer line over, across and through the land of the GRANTOR, * * * together with the right of ingress and egress over the adjacent lands of the GRANTOR, his successors or assigns, for the purpose of this easement. The permanent easement shall be twenty (20) feet in width, the center line thereof to be located along said pipe as installed, construction easement width to be as required."

The property to which the easement applied, which belonged to plaintiff, was described by courses and distances to make an irregular shape, 205 feet on its south line, 161.34 feet on its west line, 177.28 feet (on a curve) on its north line, and 210 feet on its east line, adjacent to Missouri Highway 58. The precise location of the sewer line over and across the property is not described. Witness Glen Mason, an engineer on the job, testified: "Q (By Mr. Powell) Did you see anyplace on that easement or on that particular lot it said what part of the lot the line is going through? A No. Q All right. All right. Why do you take an easement without saying exactly where across the piece of property the line is going to go? A It has been my experience all through these years that a blanket easement is usually more satisfactory than a described easement to the property owners that manage the City, and the engineers. That way we can always discuss our problem and work out a logical location for the line. If it is described, sometimes you run into problems with something that's buried, or maybe the property owner will change his mind after he's signed one of those and don't want it there. And that's happened several times on this particular job also. Q So it gives you room to maneuver, is that correct? A Right."

The initial sewer line was constructed in the summer of 1979, which entailed cutting a hole 6 × 10 feet in size and installing a manhole and cover on the side of plaintiff's property. Plaintiff's Exhibit 5, a plat of the sewer line and manhole, shows it to be about 60 feet from plaintiff's building and there is indicated thereon an existing line from just north of the building running southwest to the manhole to which it was attached. Apparently the existing line served to discharge sewage into a septic tank system. The improvement remained until July, 1980, when Boneless Beef, plaintiff's neighbor to the south, contacted it in regard to the possibility of acquiring a private line to connect its facility to the sewer manhole in front of plaintiff's property. Plaintiff declined to grant the easement.

About a month later, the City's civil engineer, Tom F. Baker, contacted plaintiff and in the conversation it developed that the City intended to install a sewer line running at an angle to the southwest from the manhole to one to be constructed on Boneless Beef's property. This line, of which about 90 feet was on plaintiff's land, was in fact constructed and this lawsuit ensued. It appeared that the Boneless Beef property was to be connected to a sewer line and manholes to its south, but it developed that the line to the south was of a higher elevation which would not accommodate a gravity flow, and, according to Baker, the City would not put a lift station on Boneless Beef's private property to service a private sewer, hence the decision to run the line across plaintiff's property to the manhole at its eastern edge. "Q Well, you ran a public sewer across Mr. Bush to serve the Boneless Beef property. A That was the City's responsibility to provide a tie in point to the public system at all occupied lots and buildings in Raymore." Baker testified further: "Q So the only change to Mr. Bush's property was in August of 1980, when you all went back in and reconstructed this system to Boneless Beef? A It was an additional line. Yes. Q Additional line? A Yes, uh-huh. Q It was never contemplated and never talked about until August of '80? A Nobody knew that there was a need until then. Q You all had constructed the manhole 131A on his property in 1979? A Yes, that's correct. Q Left, backfilled, repaved that section of the parking lot? A Yeah, that's correct. Sure. Q And, of course, when Mr. Bush signed the easement, that is the only manhole that was going to be placed? A At that time, yes."

The letter which enclosed the easement form and map to plaintiff recited: "The Sewer Line will cross your property, therefore, we need your approval to install the Sewer Line per the enclosed right of way easement. Attached to the easement form, you will find a map of your property, showing the location of the sewer line."

Plaintiff's president, James A. Bush, testified that he was aware that the easement

granted the City the right to install a sewer line over, across and through the land of grantor plaintiff, and that it did not say over what part of the property the line was going to go. He was familiar with easements, being a realtor. He did not "ask them to put on a legal description a line to be located such and such a place." He acknowledged that the easement document referred to an attached sheet for the legal description, that it provided for ingress and egress over the property to construct the sewer, and that the easement was to be 20 feet in width. His position at trial seems to be that the map which was enclosed with the easement form sent to him, showing the sewer line coming onto the eastern portion of the property to a manhole (to be constructed), controlled the extent of the easement granted (and that the City could not therefore extend it without compensation over and across any other portion of the property). He testified that Exhibit No. 5, showing a manhole No. 131A being located on the property, was discussed with Mr. Baker, whose comment was, " 'You sure got off lucky there. We only have a manhole to put in front of your building."

Plaintiff submitted its case in Instruction No. 7: "Your verdict must be for plaintiff if you believe that plaintiff has been damaged by either or both of the following: 1. The taking of property rights. 2. The uses which defendant has the right to make of the property rights taken, unless you believe plaintiff is not entitled to recover by reason of Instruction Number 10." The City submitted given Instruction No. 9, which the parties agree is a *true* (verbatim) converse of paragraphs 1. and 2. of Instruction No. 7.

On behalf of the City, Instruction No. 10 was given: "Your verdict must be for defendant if you believe plaintiff granted defendant an easement to construct and maintain the sewer line to serve Boneless Beef mentioned in evidence on plaintiff's property."

Implicit in Instruction No. 7 is plaintiff's theory that the City had no right to go beyond the manhole and take further property for the City's use to construct and maintain a sewer line. Implicit in Instruction No. 10 is the City's position that by reason of the sewer easement document, it had the right to extend the sewer line over and across plaintiff's property from the manhole to Boneless Beef's property. These two fact issues were before the jury for its determination, and within its prerogative it found for the City. The easement, being before the jury, was sufficient evidence to support the verdict, contrary to plaintiff's contention.

The City's position focuses upon its general easement granted by plaintiff for the sewer line which is without a precise description of location. That brings up a rule of law which is the basis of the City's right to put the sewer line over and across plaintiff's property as convenient and accessible in order to supply sewers to its inhabitants, in accordance with its announced plan, purpose and intent to provide sewer line services to all, including Boneless Beef. In 28 C.J.S. Easements, § 80, p. 760, referring to analogous rights of way, it is said, "Where a conveyance of a right of way does not definitely fix its location, the grantee is entitled to a convenient, reasonable, and accessible way within the limits of the grant. What constitutes a way of this character depends upon the condition of the place and the purposes for which it was intended, and the acts of those having the right of user." See *Bolomey v. Houchins*, 227 S.W.2d 752 (Mo.App.1950), where a grantor reserved to two sons a right of way through a devised tract of land without definitely fixing the location of the easement. There were uses of a branch bed, and also along its east side when the bed was impassable, and the court, citing C.J.S., supra, held the testator intended to create an easement along both ways as being convenient and accessible within the terms of the grant. Compare also *State, etc. v. Hunter Raffety Elevator, Inc.*, 636 S.W.2d 400, 402 (Mo.App.1982); and *O'Brien v. Richter*, 455 S.W.2d 473, 477 (Mo.1970).

The majority opinion herein cites *Keener v. Black River Electric Co-operative*, 469 S.W.2d 657 (Mo.App.1971), as being precisely parallel to this case. The majority completely misreads and misapplies the Keener case. If anything, it supports the factual issues submitted here and the jury's verdict based thereon. In Keener, the court merely held that there was no error in refusing defendant's instruction directing a verdict on its affirmative defense of easement if the jury found that plaintiffs *signed* the easement, which fact plaintiff admitted. [This was obviously done on the well-established basis that no error can be predicated upon a failure to submit conceded or admitted facts to the jury.] In the previous opinion on appeal, *Keener v. Black River Electric Co-operative*, 443 S.W.2d 216, 219[7] (Mo.App.1969), the plaintiffs alleged ownership of Lot 2, Highway D, Cameron Resort area, and the answer alleged an easement over the entire section of land in which plaintiffs' lot (¾ acre in size) was located. In reversing a judgment upon a directed verdict and remanding, the court merely held that there were issues of fact presented by the pleadings—whether the easement was in existence and did constitute a defense to plaintiffs' action for cutting trees on their lot. Upon the trial of the case after remand, Keener testified that he signed the easement at the request of defendant only to get service to his own house (entailing the erection of a pole on the property) and the easement was not intended to grant a right to go through his property to service others. [Without permission, defendant had gone onto plaintiff's property, and in their absence, cut 44 trees to provide a path for a service line to an adjoining lot.] Defendant's evidence was the easement which covered the entire section. On cross-examination, a witness for defendant stated that it always got an easement from one desiring service, as the Keeners did, for the purpose of extending the power line to their own land, and if it desired to extend the line, they got another easement from them for that purpose. "This conformed to the testimony of Keener as to the purpose of the

easement given." This was sufficient to affirm judgment for the Keeners, whose offer to prove the value of the trees cut was improperly rejected, but they did not appeal. The court noted, page 659, "We give to the easement the same meaning and intent that the parties gave to it. It was intended only for use of the defendant in placing a pole on, and extending service to, the plaintiffs' property. We hold that the court did not err in overruling defendant's objections [to what plaintiff was going to show extraneous to the pleaded easement] or motion for a directed verdict." [Brackets added.] The court did not say, as the majority opinion says, that as a matter of law, the defendant had no easement to extend the line.

As in the Keener case, the issue for the jury to determine was whether the easement was intended to grant only the right to put the sewer and manhole *to* plaintiff's property, as contended by it, or whether by the plain, broad terms of the grant, the City had the right to extend it over and across plaintiff's land, to serve Boneless Beef. The jury made that determination in favor of the City under all the evidence, the credibility of which was the sole function of the jury, including whether it was not the initial contemplation so to extend the line, and whether the enclosed map controlled the extent of the grant. The majority opinion errs in this statement, "As a matter of law under the evidence in this case, the City had no easement right for the construction of the additional line for the Boneless Beef property. Instruction No. 10 was erroneously given and amounted to a misdirection of the jury."

Plaintiff contends that Instruction No. 10 is an affirmative converse and that it, along with Instruction No. 9, allowed the City to have more than one converse instruction directed to plaintiff's verdict directing Instruction No. 7, supra, in violation of MAI 3d Ed., 33.01, p. 491. The City says, however, that Instruction No. 10 is one of affirmative defense, which (like an affirmative converse instruction) requires independent evidence to support it. That

evidence is here present in the form of the easement document, which the jury had before it. Besides, lending support to the City's contention, is the fact that Instruction No. 7 has a tail on it referring the jury to Instruction No. 10, a requirement unneeded if it is an affirmative converse instruction. See the comment, MAI 33.01, 3d Ed., p. 489. The City was entitled to its true converse instruction (No. 9) and an affirmative defense instruction. *Van Dyke v. Major Tractor & Equipment Co.,* 557 S.W.2d 11, 15[7, 8] (Mo.App.1977). There was no double-up of converse instructions here.

Plaintiff further says that the affirmative defense (the grant of a full easement) was not pleaded by the City, and therefore it was not entitled to submit it. The defense was not pleaded, but the easement covering all of plaintiff's property was in evidence. Plaintiff's president, Bush, acknowledged that it covered all of its property and there was no precise location specified. His position was that the then attached map, showing the line with its manhole coming to the east of plaintiff's building, controlled the extent of the easement. Witness Glen Mason, an engineer on the job, testified that the easement did not say what part of the lot the line was going through for the reason that it is more satisfactory than a described easement for a logical location of the line. The issue was in evidence before the jury, and therefore the pleadings must be deemed amended to conform to the proof, and there was no error in submitting Instruction No. 10 upon the ground that it was not initially pleaded.

The judgment should be affirmed.