**LAKE LOTAWANA ASSOCIATION, INC., Respondent,**

v.

**CITY OF LAKE LOTAWANA, a municipal corporation, and Lake Lotawana Development Company, Inc., Appellants.**

**No. WD 37696.**

Missouri Court of Appeals, Western District.

Jan. 27, 1987.

Milton B. Edmonson, Greenwood, for appellants.

Patrick B. Starke, Blue Springs, for respondent.

Before PRITCHARD, P.J., and KENNEDY and LOWENSTEIN, JJ.

KENNEDY, Judge.

This is an appeal from a judgment which purported to declare the mutual rights and duties of the Lake Lotawana Association and the Lake Lotawana Development Company with respect to the maintenance of roads, lake and dam in Lake Lotawana Subdivision in Jackson County. Because of the absence of indispensable parties, we reverse and set aside the judgment and remand the case for further proceedings.

Lake Lotawana Subdivision of Jackson County consists of a number of building lots platted around a 643–acre lake, with 13½ miles of interior roads, and a two-foot strip of land (a "parkway") surrounding the whole. The subdivision was developed by Lake Lotawana Development Company, the defendant in the present case, which filed the plat in 1928. The lots which have been sold have been restricted to single family residential use, but a few lots, retained by the grantor, have been put to some commercial use. There is mention in the evidence of a marina, a restaurant, a telephone office, and the Development Company's own real estate office.

The building lots have been conveyed to individual purchasers by deed and by contract for sale, each of which has contained the following provision:

> GRANTOR further agrees to maintain all improvements in this subdivision up to January 1, 1932, free and clear of any assessments, after which date at the grantor's discretion an annual assessment of forty-five cents (45¢) per front foot per year may be assessed against said lot for maintenance purpose, which shall be due and be paid by the owner of the lot at the time such assessment is made, and shall be a lien on said lot until paid.

It seems that several hundred—perhaps 1,500 to 2,000—of the lots have been sold to individuals who have built residences thereon. We assume most of these were sold by the mid–1930's and that the development phase was by that time substantially complete, although there apparently are lots which have never been sold and are still owned and offered for sale by defendant Development Company.

There arose in the course of time some disagreement between some of the property owners and the Development Company with respect to maintenance. In 1944 there were pending two lawsuits initiated by property owners dissatisfied with the maintenance by the Development Company. The plaintiffs in one of the lawsuits were named Spangler, Anderson and Williams respectively. This case was pending in the United States District Court for the Western District of Missouri. It was dismissed with prejudice upon stipulation of the parties in 1944. The plaintiffs in another case, in the Circuit Court of Jackson County, were Roleke and Hoffman respectively. There is in the file a decree in the latter case dated the 25th day of May, 1944. The effect of this decree is unclear. We do not have any part of the case except the decree. It declares among other things that the defendant Lake Lotawana Development Company "is not obligated to expend any moneys for maintenance in excess of sums collected for such purposes". The Development Company does not claim for this decree any res judicata effect. In any case, the two lawsuits apparently resulted in two contracts between defendant development company and plaintiff Lake Lotawana Association, the purpose of which was to transfer the maintenance function from the Development Company to the Association

and to provide for payment of the expense thereof.

The Lake Lotawana Association was a non-profit corporation incorporated by pro forma decree of the Jackson County Circuit Court in 1932. Its membership consisted only of Lake Lotawana lot owners, those members who had paid their maintenance assessments were "active" members. The Association had no power of assessment of its members. Its declared purposes include: Promoting lawfulness; conducting and overseeing improvements, and "other virtues conducive to the well-being of the community, which tends to be a public advantage." Included in its incidental powers is the power to make and perform contracts, and to receive property in trust.

The maintenance contracts mentioned above were dated May 24, 1944. They assigned from the Development Company to the Association all the responsibility of maintenance of the subdivision, and the Association accepted said responsibility. The Association was expressly described as an independent contractor with respect to the maintenance. The Development Company was to have no superintending control; the Association was to have a free hand. The Development Company was obligated to make the assessments against Lake Lotawana property as requested by the Association, within the amounts authorized by the deeds and contracts. The assessments were to be paid by the property owners to the Association, however, which would receipt for them. The assessments were not to be paid to the Development Company, but if it did receive any of them it was to remit them forthwith to the Association. A second contract contained essentially the same provisions with respect to the responsibility for maintenance within the Lake Lotawana subdivision, but it required the Development Company to pay to the Association 5% of the price of any lands thereafter sold by it upon a first-time sale.

From the time of entering into these contracts in 1944, the parties operated under them for a good many years. The time came, however, that the .45–per–front–foot ($22.50 per lot) annual assessment was insufficient to cover the expense of maintenance. At the time of the trial of this case, the assessment yielded $42,000–$44,000 per year. The Association, albeit admittedly without any authority to do so, imposed a $35–per-annum "voluntary" assessment upon each lot. This voluntary assessment brought in about $75,000 per year. In addition to the moneys from those sources, the Development Company contributed to the Association a portion of the rental received by it from the TV cable company for an easement in the roadways. Still the maintenance has fallen steadily behind. There is now an accumulation of maintenance needs—to roads, lake and dam—which will require the expenditure of from $1,620,000 to $3,090,000. This crisis precipitated the present lawsuit. Originally the lawsuit was brought against the City of Lake Lotawana, an incorporated city, and the Development Company. It was alleged in the original petition that the streets in the Lake Lotawana Subdivision had become public streets by common law dedication or by adverse use by the public. The trial court found that the streets had never become public streets but that they remained private. (The streets, lake and dam are presumably owned by the Development Company, subject to an easement for use by the lot owners.) This portion of the judgment has not been appealed and is not before us. An amended petition, the judgment upon which is before us on this appeal, added a count seeking a declaratory judgment declaring:

1. That Defendant Development Company is obligated, under the Deed of Restrictions to Lake Lotawana, to pay the total maintenance costs of improvements at Lake Lotawana, Missouri, but may assess an offset of up to forty-five cents ($.45) per front foot from the homeowners.

2. That Defendant Development Company is obligated, under the contract with Plaintiff's Association, to deliver funds to Plaintiff Association, that when combined with said $.45 per front foot assessment, will be sufficient to pay the

maintenance costs of improvements at Lake Lotawana, Missouri.

The trial court after trial entered the findings of fact, conclusions of law and judgment offered by plaintiff Association. The judgment tracked the above-quoted prayer of plaintiff's petition. That judgment, as noted, is before us on this appeal.

We find that the property owners are necessary and indispensable parties to this action. Rule 52.04(a). This is a jurisdictional requirement, and one that we must raise on our own motion. *Vanderson v. Vanderson*, 668 S.W.2d 167, 169 (Mo.App. 1984); *Riley v. Riley*, 603 S.W.2d 32, 35 (Mo.App.1980). The absence of indispensable parties deprived the trial court of jurisdiction to enter judgment. The judgment must therefore be vacated and set aside. *Lake Sherwood Estates Association v. Continental Bank & Trust Co.*, 677 S.W.2d 372 (Mo.App.1984); *O.F.L. v. M.R.R.*, 518 S.W.2d 113 (Mo.App.1974).

The judgment in this case would not be binding upon the property owners. *Neal v. Drennan*, 640 S.W.2d 132, 135 (Mo.App. 1982). The Development Company's obligation to maintain the Lake Lotawana improvements runs to the lot owners. The Development Company might pay to the Association under this judgment such sums as it and the Association might agree were sufficient for maintenance, but that would furnish no defense to a claim by a lot owner against the Development Company based upon the Development Company's failure to maintain under the maintenance clause in the warranty deed or the contract of sale. The judgment would "leave [Development Company] ... subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of [the lot owners'] claimed interest." Rule 52.04(a)(2)(ii).

Should the litigation proceed after joinder of the lot owners as parties, some reminders to the parties are in order: It is the office of the declaratory judgment to still the controversy between the parties, to settle their rights and to usher in certainty and stability. *Contracting Plumbers As-*

*sociation of St. Louis v. City of St. Louis*, 249 S.W.2d 502, 505 (Mo.App.1952); *Myers v. Mutual Life Insurance Co. of New York*, 12 F.R.D. 447, 448 (W.D.Mo.1952); E. Borchard, Declaratory Judgments 283 (2d ed. 1941). The judgment in this case purports to settle one controversy between the parties, that is, the dispute whether the Development Company's open-ended obligation to maintain continues indefinitely after January 1, 1932, as the Association contends, or whether its maintenance obligations terminated at that time, as the Development Company maintains. The proposed enforcement scheme of this judgment, however, far from disposing of the parties' case, opens up an array of new controversies to be agreed upon or litigated. How is the amount to be decided which is "sufficient for maintenance"? Are maintenance payments to be made in advance, or after the maintenance has been performed? What interval of time is to be covered by each payment, if more than one payment is contemplated? Is the requirement of payment of maintenance retrospective or prospective? If retrospective how far back does it reach? If prospective, how far forward? Over what period of time are the extensive needed repairs to be made? And this list of problems is not exhaustive.

What disposition we might have made of this judgment, if the absence of indispensable parties had not prevented our consideration of the points presented by the appeal, we venture no prediction. If the judgment reaches us again in this form, we will perhaps have the assistance of such additional record as the parties will have made and of their briefs treating of the subject.

The judgment below is vacated and set aside, and the cause is remanded for further proceedings consistent with this opinion.

All concur.