**Mohammed OBAIDULLAH, Respondent,**

v.

**Mohammed A. KABIR and Nafisa Kabir, Appellants.**

No. 64289.

Missouri Court of Appeals,
Eastern District,
Division One.

June 21, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 4, 1994.

Application to Transfer Denied
Sept. 20, 1994.

Robert P. Baine, Jr., Florissant, for appellant.

Theodore Dennis Dearing, Clayton, for respondent.

CRIST, Judge.

Appellants, Mohammed A. Kabir and Nafisa Kabir, appeal from a judgment finding they owed Respondent, Mohammed Obaidullah, $25,000 principal and $14,340 interest on a loan made in 1987. We affirm.

The record, viewed in the light most favorable to the verdict, reveals the following chain of events: On February 10, 1987, the Kabirs requested a loan from Obaidullah to help them with financial problems. Nafisa Kabir is Obaidullah's sister. Obaidullah agreed to loan them $25,000. However, Obaidullah told them he would borrow most of the money from the bank against a $20,000 certificate of deposit (CD). The Kabirs agreed to repay Obaidullah, including any interest incurred by Obaidullah.

The next day, Obaidullah withdrew $5,000 from a savings account he had at St. Louis Telephone Credit Union. Then, Obaidullah and his wife went to Community Federal where they jointly owned a $20,000 CD. Obaidullah's wife agreed he could borrow money using the CD as collateral. Community Federal loaned Obaidullah $20,000. Obaidullah alone signed the loan papers and a check for $20,000 was issued solely to Obaidullah. Obaidullah was required to pay the $1,400 interest on the loan up front. The loan was to be repaid before the six-month CD matured on August 9, 1987.

Obaidullah gave the $25,000 to the Kabirs. Obaidullah also gave them a card with which they could make payments on the $20,000 loan directly to Community Federal. He also requested they immediately reimburse him for the $1,400 in interest he had paid up front. The Kabirs never reimbursed Obaidullah for the $1,400. Also, they never made any payments on the $20,000 loan. In August of 1987, Obaidullah had to extend the loan for another six months, until February of 1988. He again paid $1,400 interest up front. The Kabirs never paid Obaidullah the additional $1,400. When the Kabirs never made any payments on the loan, Obaidullah extended it in February of 1988 and again in August of 1988. The Kabirs mailed Obaidullah an IRS form 1099–INT for 1988 claiming they paid him $2,800 in interest that year.

In February of 1989, Obaidullah attempted to get the Kabirs to agree to a five-year loan from Community Federal. They refused. Obaidullah then renewed his initial $20,000 loan for a year. In May of 1989, the Kabirs gave Obaidullah a check for $15,000. After Obaidullah deposited the check, it was returned for insufficient funds.

In mid–1990, Community Federal sued Obaidullah on the promissory note he executed in February of 1989. The judgment was paid with Obaidullah's CD and his own personal funds. In January of 1991, the Kabirs paid Obaidullah $500. Obaidullah never received any other payment on his $25,000 principal or interest from the Kabirs.

On May 15, 1991, Obaidullah sued the Kabirs alleging three counts: Count I—contract claim for $25,000 loaned to the Kabirs; Count II—claim for money had and received; and Count III—insufficient funds claim for the $15,000 check which bounced. In their answer, the Kabirs generally denied the allegations, but further stated, "all transactions relating between Plaintiff [Obaidullah] and Defendants [Kabirs] were between Plaintiff and Mohammed A. Kabir; that Nafisa Kabir had no part in any transaction...."

After trial, on April 20, 1993, the jury returned a verdict in favor of Obaidullah for $25,000 principal and $14,340 interest. Following the verdict, the Kabirs filed a motion to set aside the judgment for Obaidullah's failure to join a necessary and indispensable party, his wife, under Rule 52.04. The court denied the motion summarily, without stating its reasons.

The Kabirs' appeal disputes, in three separate points, the court's ruling on their motion to set aside for failure to join Obaidullah's wife Yasmeen, a necessary and indispensable party under Rule 52.04.

Before addressing the merits of the Kabirs' challenge, both the Kabirs (in Point II) and Obaidullah address the propriety of raising such a claim after trial. Obaidullah claims the Kabirs have waived any challenge under Rule 52.04 by waiting until after trial to present the issue.

The issue of whether there has been a failure to join a necessary and indispensable

party under Rule 52.04 is jurisdictional and may be raised at any time, even on appeal. Rule 55.27(g)(2); *Kelsey v. Nathey,* 869 S.W.2d 213, 216[3] (Mo.App.1993); *Cunningham v. Burke,* 705 S.W.2d 120, 122[1] (Mo. App.1986). Further, Obaidullah's reliance upon cases citing *DeBacker v. Forbes,* 406 S.W.2d 811 (Mo.App.1966), is misplaced, since *DeBacker* was decided prior to adoption of Rule 55.27(g)(2). *See, Kelsey,* 869 S.W.2d at 216. Therefore, we must address the merits of the Kabirs' contentions.

The Kabirs first argue the evidence "clearly demonstrated" that both Obaidullah and his wife Yasmeen were co-creditors of the loan and thus, Yasmeen must have been joined as a necessary and indispensable party.

■ We review the trial court's denial of the Kabirs' motion only to determine if it is supported by substantial evidence, is against the weight of the evidence, or if it erroneously declares or misapplies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32[1] (Mo. banc 1976); *Kelsey,* 869 S.W.2d at 216.

The Kabirs rely upon *Justus v. Webb,* 634 S.W.2d 567 (Mo.App.1982), to support their argument. In *Justus,* this court held that clear rules of contract law provide "when an obligation has been executed to two jointly they must both sue upon it." *Id.* at 570[11]; *See also, Schmitz v. Taylor–Morley–Simon,* 708 S.W.2d 786, 786–87[1] (Mo.App.1986) (wife of home buyer who co-signed contract was a necessary party). However, in *Justus,* clear evidence existed that the wife was a party to the contract. In that case, the wife and husband together agreed to remodel the interior of the defendants' home in exchange for rent-free use of the house. *Justus,* 634 S.W.2d at 568–69; *See, Schmitz,* 708 S.W.2d at 786 (wife of home buyer also signed written contract with builder to build house).

■ In the case at hand, however, the record supports a conclusion that Yasmeen did not take part in the loan to the Kabirs. The testimony of both Obaidullah and his sister Saraiya Begum clearly indicated Obaidullah alone was making the loan to the Kabirs. Yasmeen took no part in the discussion with the Kabirs regarding the loan.

The Kabirs' actions indicate they believed the loan was made solely by Obaidullah. The two checks they wrote were made out solely to Obaidullah. The Kabirs issued a form 1099–INT in 1988 only in Obaidullah's name. Indeed, the Kabirs refer in their answer to the transaction taking place between Mohammed Kabir and Mohammed Obaidullah.

The Kabirs make much of the fact the major source of the funds for the loan to them came from Obaidullah obtaining a loan using a CD held by both Obaidullah and Yasmeen as collateral. However, the loan made by Community Federal was to Obaidullah alone. Furthermore, it is generally irrelevant where Obaidullah obtained the money for his loan to the Kabirs in determining to whom the Kabirs owed their ultimate obligation. In addition, the general gist of all the testimony was that the obligation was owed to Obaidullah alone.

Therefore, we find no error in the trial court's denial of the Kabirs' motion to set aside judgment. Because the evidence supports the conclusion Yasmeen was not a co-creditor on the loan, Yasmeen is not a necessary nor an indispensable party to this suit.

Finally, the Kabirs also contend Obaidullah's attorney judicially admitted Yasmeen was a co-creditor of the loan. The Kabirs point to statements made by Obaidullah's attorney in his opening. However, none of these statements unequivocally concede the Kabirs owed the money to both Obaidullah and Yasmeen, and thus, are not judicial admissions. *See Mitchell Eng., Div. of CECO v. Summit Rlty.,* 647 S.W.2d 130, 140–41[7] (Mo.App.1982) (judicial admission concedes truth of alleged fact and does away with need for evidence on the subject); *Smith v. Whalen,* 613 S.W.2d 868, 870[4] (Mo.App.1981) (unequivocal admissions by attorney in opening are judicial admissions). Point denied.

Judgment affirmed.

CRANDALL, P.J., and REINHARD, J., concur.