**WILLIAMS PIPELINE COMPANY,
Respondent,**

v.

**ALLISON & ALEXANDER, INC., Don D. Alexander Jr., Faye L. Alexander and J.A. Renner, Inc., Appellants.**

**No. WD 59453.**

Missouri Court of Appeals,
Western District.

July 23, 2002.

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

Christopher J. Molzen, Kansas City, for Appellants.

Douglas S. Laird, Kansas City, for Respondent Williams Pipeline.

Before: HOLLIGER, P.J., ULRICH and HARDWICK, JJ.

LISA WHITE HARDWICK, Judge.

This appeal arises from a judgment enjoining Allison & Alexander, Inc., Don Alexander, Faye Alexander, and J.A. Renner, Inc. (collectively "Appellants") from unreasonably interfering with easement rights granted to Williams Pipeline Company ("Williams Pipeline"). Appellants claim the trial court lacked jurisdiction to order equitable relief because: 1) an adequate remedy at law existed; 2) all necessary and indispensable parties were not joined in the action; and 3) J.A. Renner, Inc. and Allison & Alexander, Inc. had no ownership interest in the property subject to the easement and therefore could not be enjoined. We affirm.

## Factual and Procedural History

The subject easement originated on October 7, 1930, pursuant to a "Right of Way Agreement" between Great Lakes Pipe Line Company ("Great Lakes") and the Renner family, owners of a 13.5–acre tract of land ("property") located in Riverside, Missouri. The easement gave Great Lakes and its successors or assigns "the right to lay, maintain, operate, re-lay and remove at any time a pipeline or pipelines for the transportation of oil products, gas and water, and if necessary, to erect, maintain, operate and remove telegraph and telephone lines, with right of ingress and egress to and from the same, on, over and through [the 13.5 acre property]." The easement further provided that "said grantors heirs or assigns are to fully use and enjoy the said premises except the easement for the purposes hereinbefore granted to the said Great Lakes Pipe Company, its successors and assigns."

Sometime in the 1950's, four pipelines were laid across the property pursuant to the easement. The pipelines were originally placed three to four feet below the surface of the ground level, which was approximately 742 feet above sea level. This depth of placement allowed for cultivation of the land, as well as access for repair and maintenance of the lines. The pipelines were laid parallel to one another and are situated four to eight feet apart, such that the total width of distance between the four pipelines is approximately thirty feet.

In 1966, Williams Pipeline acquired the subject easement rights from Great Lakes, as well as ownership of the four pipelines. Currently, Williams Pipeline owns two of the pipelines, both of which carry petroleum products. The remaining two pipelines carry fiber optic cables and are owned by Williams Communications and MCI World-Com. Williams Pipeline sold these two pipelines but retains ownership of the easement.

The subject property and easement area lie within the flood plain of the Missouri River. Due to the risk of flooding, the City of Riverside does not issue building permits for development in the flood plain until the ground level is raised to at least 757 feet above sea level.

In 1997, Don and Faye Alexander ("the Alexanders") agreed to purchase the 13.5–acre property from the then titleholder, J.A. Renner, Inc. Although the purchase was not completed until sometime between October and December 1999, the Alexanders, through their closely held corporation of Allison & Alexander, Inc., began planning in 1997 to transform the property for commercial development. They intended to place seventeen feet of compacted fill over the entire property, part of which would then be paved and used as a parking lot. Allison & Alexander, Inc., prepared a preliminary site development plan and obtained a letter of agreement from J.A. Renner, Inc., which authorized placement of fill on the property. The City of Riverside issued a filling and grading permit in September 1997.

Over the next several months, Allison & Alexander, Inc. placed, compacted and graded approximately 200,000 cubic yards of fill over most of the property to raise it to approximately 758 feet above sea level. The fill was comprised of interlocking chunks of concrete, asphalt, bricks, iron rebar, rocks and dirt. Some of the concrete sections were as large as eighteen inches thick and several square feet in surface area.

In November 1997, when the elevation of approximately five acres of the 13.5–acre property had been raised, Don Alexander requested Williams Pipeline to mark the location of the pipelines in the ease-

ment. Williams Pipeline told Don Alexander there was a 100–foot wide easement and that no more than six feet of fill should be placed over the pipelines. Don Alexander responded that he had seen property surveys which indicated the easement was only thirty feet wide. After several months of discussion, Williams Pipeline and the Alexanders were unable to resolve this discrepancy because the original Right of Way Agreement did not specify dimensions for the easement.

In the spring of 1998, Williams Pipeline requested that filling and grading on the property cease, and that all fill material be removed from within fifty feet of the centerline of the pipelines, consistent with a 100–foot easement. The Alexanders agreed to remove all fill directly above the thirty-foot width of the pipelines but directed Allison & Alexander, Inc. to continue filling and grading the remainder of the property. A depth of seventeen feet of fill was left in place surrounding the area where the pipelines lay, leaving a sloping thirty-foot wide trench on the property.

In November 1998, Allison & Alexander, Inc. applied for renewal of the filling and grading permit. The City of Riverside denied the permit and subsequently placed a moratorium on all building and grading in the Missouri River bottom flood plain. The moratorium was imposed in conjunction with the Riverside Quindaro Bend Levee District, which was created as a regional authority to combat and protect the entire area from flooding.

On May 10, 1999, Williams Pipeline filed an Application for Injunctive Relief, requesting the Platte County Circuit Court to restrain Appellants from placing additional fill on the property and to order removal of the fill from within fifty feet of the centerline of the pipelines. An Amended Application, seeking the same relief, was filed August 19, 1999. Appel-

lants answered and counter-claimed, seeking to limit the easement to a thirty-foot width. Appellants also raised the affirmative defense that injunctive relief should not be granted because Williams Pipeline had an adequate remedy at law.

Allison & Alexander, Inc. filed a Motion to Dismiss asserting no judgment could be entered against the corporation because it did not own the property subject to the easement. Appellants also collectively filed a Motion to Dismiss for failure to join as indispensable parties the owners of the other two pipelines, Williams Communications and MCI WorldCom, and other entities with easement rights to the property. The trial court denied all of the dismissal motions.

A three-day bench trial was held in May and June 2000. Williams Pipeline presented evidence that the placement of seventeen feet of fill over the property impeded its reasonable access granted in the easement to inspect, maintain and repair the pipelines. The depth and chunky composition of the fill made it extremely difficult to dig through and move. While it would normally take a few hours to excavate several hundred yards of dirt, the concrete-laden fill would take several days to remove.

Although Appellants had removed the fill over a thirty-foot wide area directly above the pipelines, the resulting narrow, sloping trench increased the danger, expense and time required to reach the pipelines, as well as the risks of undetected or belatedly detected petroleum leaks. Such leaks could have disastrous environmental consequences for the surrounding land and nearby waterways, including Line Creek and the Missouri River. Witnesses testified that repairmen would require at least a 100–foot wide space to excavate the area and safely access the pipelines in an emergency situation. Thus, Williams Pipeline

argued the placement of fill within fifty feet on either side of the center of the pipeline corridor constituted an unreasonable restriction of its rights under the easement.

Despite filing a counterclaim to limit the easement to a thirty-foot width, Appellants' counsel requested in opening statement at trial that the court declare a fifty-foot wide easement:

> Bottom line is they want a hundred feet. They don't need it. We're gonna ask you to declare if for *fifty-feet wide* and then we're gonna ask you to enter an order allowing us to proceed with the remainder of the fill. And should they choose to want to supervise it, that's fine with us. But we're gonna ask you for those two declarations. Thank you.

(emphasis added)

During their case in chief, Appellants presented expert testimony from Jim Watson, a licensed mechanical engineer. Watson testified that a forty-nine-foot wide easement "would be necessary for Williams Pipeline ... to excavate and repair and maintain its pipes." Upon further questioning from Appellant's counsel, Watson stated that the pipeline repairs could "probably" be made with an easement as narrow as thirty feet wide "if you absolutely had to." Based on Watson's testimony, Appellants requested in closing arguments that the court declare the subject easement to be thirty feet wide and deny injunctive relief.

On July 28, 2000, the trial court entered judgment in favor of Williams Pipeline. The court declared a 100–foot wide easement and concluded that Appellants' placement of fill on the property constituted a "substantial encroachment" upon the rights granted to Williams Pipeline. The judgment enjoined Appellants from placing additional fill within fifty feet on each side of the centerline of the pipeline corridor

and ordered removal of fill placed within the 100–foot easement.

Appellants filed a Motion for New Trial asserting the declaration of the 100–foot easement was against the weight of the evidence. They further challenged the trial court's jurisdiction to grant equitable relief without joinder of all necessary parties and argued that Williams Pipeline had an adequate remedy at law through condemnation proceedings. The trial court denied the motion, and this appeal follows.

## Standard of Review

■ We must affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976); *Miss. River Transmission Corp. v. Wachter Constr., Inc.*, 731 S.W.2d 445, 446 (Mo. App. E.D.1987).

■ Appellants challenge the trial court's judgment on three jurisdictional grounds. The determination of jurisdiction is generally a question of law that we determine *de novo*. *Grooms v. Grange Mut. Cas. Co.*, 32 S.W.3d 618, 620–21 (Mo. App. E.D.2000). However, where jurisdiction is based on factual determinations, we defer to the trial court's findings and accept as true any facts which support conferring jurisdiction. *Groh v. Groh*, 910 S.W.2d 747, 749 (Mo.App. W.D.1995).

## Availability Of An Adequate Remedy At Law

■ Under Missouri law, if an adequate remedy at law exists, the trial court lacks jurisdiction to enter an injunction. *Schildknecht v. Dir. of Revenue*, 901 S.W.2d 348, 349 (Mo.App. E.D.1995). Appellants argue the trial court lacked jurisdiction to grant equitable relief because

Williams Pipeline had an adequate remedy at law through condemnation proceedings.

The parties do not dispute that the original "Right of Way Agreement," between Great Lakes and the Renner family, constituted a general easement which did not limit the grantee's access or usage rights to a specific area of the property. The easement granted Great Lakes the right to install, maintain, repair, or remove pipelines, and permitted the right of "ingress and egress ... on, over and through" the entirety of the 13.5–acre property. Pursuant to this authority, Great Lakes built four pipelines across the property in the 1950's. The pipelines were laid parallel to one another, all within a thirty-foot wide area.

On appeal, Appellants contend that upon laying the four pipelines, Great Lakes converted the general easement into a fixed easement limited to the thirty-foot wide area. *Area Real Estate Assocs., Inc. v. City of Raymore*, 699 S.W.2d 461, 464 (Mo.App. W.D.1985). Thus, when Williams Pipeline became owner of the easement and pipelines in 1966, it acquired rights to a thirty-foot fixed easement. Appellants argue that any expansion of the fixed easement to 100 feet would constitute an unlawful taking of their property without just compensation. To legally expand the fixed easement, Appellants assert Williams Pipeline had to comply with Missouri's condemnation law, which grants certain entities eminent domain authority to acquire private property for public use. Section 523.010 RSMo 2000.[1] As the owners of an interstate pipeline system for the public benefit, Williams Pipeline could have exercised condemnation authority. See *Phillips Pipe Line Co. v. Brandstetter*, 241 Mo.App. 1138, 263 S.W.2d 880 (1954).

Appellants contend the availability of this statutory remedy negated Williams Pipeline's right to seek injunctive relief.

Appellants' argument is entirely premised upon the faulty assumption that Williams Pipeline sought to convert a fixed thirty-foot wide easement into a 100–foot easement. This is a mischaracterization of the underlying claim and the action taken by the trial court.

In their Amended Application for Injunctive Relief, Williams Pipeline sought to enjoin Appellants from unreasonably interfering with its right to access, maintain, and repair the four pipelines originally laid pursuant to the easement. Williams Pipeline did not seek to lay additional pipelines or in any way expand its usage of the property. It merely sought to have the court identify an appropriate width for reasonable access to the pipelines and, thereafter, require Appellants to remove any fill impeding such access. In short, Williams Pipeline did not seek to broaden or convert the scope of the easement, rather it sought only to define the proper scope of the easement based on past use.

Appellants apparently believe that no matter how Williams Pipeline pled its claim, the practical outcome of the trial court's order is to expand the easement from thirty feet to 100 feet and thereby effect an unconstitutional taking of the property without just compensation. However, the case law cited in Appellants' brief does not support this conclusion. For example, in *Area Real Estate*, a land owner agreed to a 1978 easement allowing the City of Raymore ("City") to install a sewer line within a twenty-foot width across the owner's property. 699 S.W.2d at 462. After the sewer line was installed

---

**1.** All statutory references are to Revised Statutes of Missouri (2000) unless otherwise noted.

in 1979, the City decided to run an additional line in 1980 pursuant to the same easement. *Id.* The property owner sued to enjoin construction of the new sewer line. *Id.* at 461. The trial court denied injunctive relief, finding the general language of the easement was broad enough to allow the City to construct additional sewer lines across the property. *Id.*

On appeal, the judgment was reversed and remanded. *Id.* at 464. The appeals court held that despite the "broad general easement" language, the conduct of the parties indicated their intent to convert the general easement into a fixed easement allowing only a single sewer line over a specific area of the property. *Id.* This conversion limited the City's easement rights to its original use. *Id.* Based on this conversion from a general easement to a fixed one, the appeals court held: "[a]s a matter of law ... the City had no easement right for the construction of the *additional* [sewer] line...." *Id.* (emphasis added).

The ultimate holding in *Area Real Estate* is inapplicable here, where Williams Pipeline never sought to expand its easement right beyond the original use. That case, and others cited by Appellants, is instructive only with regard to the common law statement that a general easement can be converted to a fixed easement based on the parties' intent, as evidenced by their conduct and original use of rights granted. See *Edward Runge Land Co. v. Busch,* 594 S.W.2d 647, 650 (Mo.App. E.D. 1980); *Keener v. Black River Elec. Co-op.,* 469 S.W.2d 657, 658–59 (Mo.App. E.D. 1971); *Bolomey v. Houchins,* 227 S.W.2d 752, 755 (Mo.App. E.D.1950). In this regard, Appellants are correct that Great Lakes converted the general easement to a fixed easement when it laid the four pipelines in the 1950's. As the trial court found in the judgment, "the location of the pipelines is known to all the parties and has been fixed and certain for nearly fifty (50) years." However, no formal declaration was made in the 1950's as to the dimensions or scope of the fixed easement based on the need for reasonable access to the pipelines. The instant lawsuit filed by Williams Pipeline was the first formal request for such a declaration.

■ In effect, the trial court's judgment was a declaration that Williams Pipeline acquired rights to a 100–foot wide fixed easement based on the placement of the pipelines in the 1950's. This determination was supported by substantial factual evidence that repairmen would require an area at least 100–feet wide to reasonably and safely access the pipelines. Although Appellants' expert witness testified that repairs "probably" could be made with as little as thirty feet of space, the trial court resolved this conflict in favor of Williams Pipeline. We must defer to this factual determination. Contrary to Appellants' argument on appeal, the subject easement was never fixed at a thirty-foot width,[2] and the trial court did not effect an unlawful taking of the subject property in declaring the reasonable scope of the easement to be 100–feet wide.

**2.** Although Appellants firmly argue on appeal the existence of a fixed thirty-foot easement, they wavered considerably on this point at the trial court. Appellants filed a counterclaim seeking declaration of a thirty-foot easement but, in opening statements at trial, their counsel agreed that a fifty-foot easement was reasonable. Appellants' expert witness opined during direct examination that a forty-nine-foot wide space was "necessary" to repair the pipelines. Upon further questioning from Appellants' counsel, the expert said the repairs could "probably" be made in thirty feet of space "if you absolutely had to." These inconsistencies undermine Appellants' argument on appeal that the easement was "fixed" at thirty feet, such that it could only be expanded through condemnation.

Williams Pipeline was not required to pursue condemnation because it only sought a declaration and enforcement of its rights based on the original use of the easement. Missouri courts have long recognized the remedy of injunction to prevent the interference with or infringement of the rights acquired by easement. *Kansas City Power & Light Co. v. Riss,* 319 S.W.2d 262, 265 (Mo.App. W.D.1958); *Nelson v. Wheeler Enters., Inc.,* 593 S.W.2d 646, 647 (Mo.App. S.D.1980); *Moschale v. Mock,* 591 S.W.2d 415, 418 (Mo.App. S.D. 1979). Given Appellants' conduct in placing (or allowing placement of) seventeen feet of fill over the area of the declared easement, the trial court properly exercised jurisdiction to grant Williams Pipeline equitable relief.

### Joinder of Necessary Parties

■ Appellants contend the judgment must be reversed pursuant to Rule 52.04[3] because the trial court lacked jurisdiction to proceed without joinder of several necessary parties. They claim Williams Pipeline failed to join the following entities based on their respective interests in the subject property: Williams Telecommunications, MCI WorldCom, Missouri City's Water Company, the Parkville Water Company, the City of Riverside, and the Riverside Quindaro Bend Levee District. Appellants filed a Motion to Dismiss for Failure to Join Indispensable Parties, but the trial court denied relief.

■ Rule 52.04(a)(2)(i) requires joinder of a person who claims an interest in the subject of the action, such that disposition of the action in the person's absence may impair or impede their ability to protect that interest. *Mo. Nat'l Educ. Ass'n v. Mo. State Bd. of Educ.,* 34 S.W.3d 266,

276 (Mo.App. W.D.2000). A necessary person is one who is so vitally interested in the subject matter that a valid judgment cannot be effectively rendered without their presence. *Id.* at 277. An "interest" exists within the meaning of the Rule where there is a "direct claim upon the subject matter of the action that the person will either gain or lose by direct operation of the judgment." *Id.*

■ An action may proceed without a necessary party if joinder is unfeasible but not absent joinder of an indispensable party. *Clark v. Fitzpatrick,* 801 S.W.2d 426, 430 (Mo.App. W.D.1990). If a party is not a necessary party, it cannot be an indispensable party. *State ex rel. Bartlett & Co., Grain v. Kelso,* 499 S.W.2d 579, 582 (Mo.App. W.D.1973). The question of whether there has been a failure to join a necessary and indispensable party under Rule 52.04 is jurisdictional. *Obaidullah v. Kabir,* 882 S.W.2d 229, 230–31 (Mo.App. E.D.1994). We review the trial court's denial of relief under this Rule only to determine if it is supported by substantial evidence, is against the weight of the evidence, or it erroneously declares or misapplies the law. *Id.* at 231.

Appellants argue that where the establishment or validity of an easement is adjudicated, title to real estate is at issue and parties with interests in the land are directly affected. They cite several cases for the proposition that when the controversy involves interest in or title to real estate, all parties with an interest in the real estate are indispensable parties. *Heitz v. Kunkel,* 879 S.W.2d 770, 771–72 (Mo.App. S.D.1994); *Lake Lotawana Ass'n, Inc. v. City of Lake Lotawana,* 723 S.W.2d 585, 588 (Mo.App. W.D.1987);

**3.** All rule citations are to Missouri Rules of Civil Procedure (2001) unless otherwise noted.

*Spellerberg v. Huhn,* 672 S.W.2d 728, 729 (Mo.App. E.D.1984). They claim each of the referenced entities have a legal interest in the property that is adversely affected by the trial court's declaration of Williams Pipeline's 100–foot easement. Thus, the court was obligated to join the interested entities as necessary and indispensable parties or, alternatively, dismiss the case for failure to comply with Rule 52.04.

Again, Appellants' argument misapprehends the nature of the claim and remedy sought by Williams Pipeline. This case does not involve any dispute over title to the subject real estate. All of the cases cited by Appellants found that current or former property owners were indispensable parties in declaring rights affecting titleholders. The primary issue in the instant case was whether the placement of seventeen feet of concrete-laden fill over the property unreasonably interfered with Williams Pipeline's easement rights. The critical parties to that question were the past and present landowners, J.A. Renner, Inc. and the Alexanders; the entity directing and conducting the filling operation, Allison & Alexander; and the owner of the easement, Williams Pipeline. All were properly named as parties in the lawsuit.

In determining whether Appellants interfered with the easement, the trial court did not address any issue affecting title in the property or impede the rights of other entities with tangential interests in the property. See *Kansas City Power & Light Co. v. Riss,* 312 S.W.2d 846, 847 (Mo.1958) (suit seeking to enjoin interference with existing easement rights did not involve adjudication of title to real estate). Now that injunctive relief has been granted, Appellants have still failed to show that any of the alleged indispensable parties were "directly affected" by the trial court's

action. *Frye v. Shuman,* 806 S.W.2d 157, 159 (Mo.App. S.D.1991).

Williams Telecommunications and MCI WorldCom own two of the four pipelines that lie within the easement. There is no evidence that the ownership or operation of the fiber optic cables in these pipelines was adversely affected by the relief granted to Williams Pipeline. Likewise, Missouri City Water Company and the Parkville Water Company have their own waterline easements, which have long co-existed with those of Williams Pipeline on the property. In determining the scope of Williams Pipeline's easements and enjoining Appellants' interference, the court did not compromise or harm these collateral waterline interests.

Appellants also argue the City of Riverside was an indispensable party because it imposed a moratorium precluding any building or grading on property in the Missouri River flood plain. The moratorium allegedly was broad enough to preclude Appellants from removing fill on the property pursuant to the trial court's order. Dwight Flowers, Code Enforcement Officer for the City of Riverside, testified at trial that the moratorium was scheduled to expire on June 15, 2000. The trial court did not enter judgment in the case until July 28, 2000. Thus, the court could reasonably presume the moratorium was no longer in effect at the time it ordered Appellants to remove the fill. There is no evidence the moratorium actually conflicted with the removal order. As such, the City of Riverside was not a necessary or indispensable party.

Appellants contend the Riverside Quindaro Bend Levee District ("Levee District") was an indispensable party because it filed condemnation proceedings against the subject property during the pendency of the Williams Pipeline lawsuit. Appellants never raised this issue before the

trial court but have included documents from the condemnation action in their appendix on appeal. According to Appellants, the Levee District has now obtained condemnation rights and has authority to remove all pipelines on the property, if it desires to do so.

Regardless of the status or outcome of the condemnation action,[4] we cannot conclude that the Levee District is directly impacted by the injunctive relief granted to Williams Pipeline. The trial court's judgment states as follows:

Plaintiff's application for injunctive relief is granted and *Defendants* are ordered to remove all fill placed by or at the request of *Defendants* on the 100 foot easement. . . .

*Defendants* are enjoined now and in the future from filling the property within fifty (50) feet on each side of the centerline of the pipeline described above running through the property.

(emphasis added). The judgment is clear that only the Appellants are restrained from placing fill on the property, and only the Appellants are ordered to remove fill within the 100–foot declared easement. The trial court's action does not preclude the removal of pipelines by the Levee District nor in any way impede such removal. To the extent the Levee District has condemnation rights over the property, Appellant has failed to show those rights are adversely affected by the relief granted to Williams Pipeline.

The parties directly involved in the interference with Williams Pipeline's easement rights were properly joined in this action. The trial court was not required to join other entities with remote interests in the property or a "conjectural possibility of being affected" by the judgment. *Mo. Nat'l Educ. Ass'n,* 34 S.W.3d at 277. The absence of these entities did not inhibit the court's ability to render a valid judgment. Accordingly, none were necessary or indispensable parties, and the trial court had jurisdiction to proceed without joinder.

### Propriety of Judgment Against Non–Property Owners

■ Appellants contend a party must own the property in question in order to have a judgment entered against them on issues arising from that property. Since neither J.A. Renner, Inc. nor Allison & Alexander owned the subject property during the pendency of the case, they claim the trial court had no authority to enter personal judgments against them. In support of this theory, Appellants cite *Terry v. McIntosh,* 941 S.W.2d 595, 598–99 (Mo.App. W.D.1997) (County was not liable for a boat passenger's death where County exercised no control over lake where accident occurred); and *Grease Monkey Int'l, Inc. v. Godat,* 916 S.W.2d 257, 262 (Mo. App. E.D.1995) (trial court erred in imposing a lien on parent company's property for the conduct of a subsidiary, thereby making the parent company liable for the debt of the subsidiary without the opportunity to be heard). In both cases, an entity was improperly held responsible for the actions of another over which it had no control or involvement. Those cases are inapplicable here, where J.A. Renner, Inc. and Allison & Alexander, Inc. were directly involved in the encroachment of Williams Pipeline's easement rights and

---

4. It is unclear from the appendix documents whether the separate action brought by the Levee District may be properly characterized as a condemnation proceeding and precisely what rights the Levee District acquired in the action. Even assuming Appellants' description of the separate proceeding is correct, they have failed to show that non-joinder of the Levee District prevented the trial court from entering a valid judgment in the instant case.

could, therefore, be enjoined from this improper conduct.

The record indicates J.A. Renner, Inc. was the titleholder in 1997, when it agreed to sell the subject property to Don and Faye Alexander and allow the placement of fill in preparation for commercial development. As a closely-held corporation of the Alexanders, Allison & Alexander, Inc. obtained the necessary permits and then directed placement of 200,000 cubic yards of fill over the property. By the spring of 1998, most of the filling, compacting, and grading operation was complete. J.A. Renner, Inc. owned much, if not all, of the property during this time because the sale of the property to the Alexanders was not completed until sometime between October and December 1999.

These facts demonstrate that J.A. Renner, Inc. and Allison & Alexander, Inc. were "in active concert or participation" with the Alexanders in placing fill on the property and thereby interfered with Williams Pipeline's easement rights. Rule 92.02(e).[5] Whether or not the corporations owned the property at the time judgment was entered, they may be enjoined from their conduct or permissive acquiescence in trespassing the right-of-way. *See e.g. Winslow v. Sauerwein,* 285 S.W.2d 21, 25 (Mo.App. E.D.1955) (abutting property owner could be properly restrained from trespass of private drive to access his property); *Kugler v. Ryan,* 682 S.W.2d 47, 50 (Mo.App. E.D.1984) (anti-abortion protestor enjoined from trespass on doctor's property); *Union Elec. Land & Dev. Co. v. De Graffenreid,* 229 Mo.App. 622, 78 S.W.2d 571, 572 (1934) ("writ of injunction exists to prevent repeated trespasses on land"). Participation in the encroachment,

not property ownership, determines whether a party is subject to injunction.

Given evidence of the corporations' participation in the encroachment, the trial court had discretion to fashion an equitable remedy in consideration of the case circumstances, the willfulness of the encroaching party, and the conduct of the party whose rights were encroached upon. *Ridgway v. TTnT Dev. Corp.,* 26 S.W.3d 428, 433 (Mo.App. S.D.2000). There is no dispute in this case that J.A. Renner, Inc. and Allison & Alexander, Inc. were aware of Williams Pipeline's easement at the time they placed or authorized placement of seventeen feet of fill over the property. Appellants willfully failed to heed Williams Pipeline's notice that an easement of 100 feet was necessary to safely access the pipelines. Under the circumstances of this intentional encroachment, the trial court was well within its discretion to order removal of all fill within the declared easement area. *Id.* at 433–35 (developer required to remove roadway that "willfully or carelessly" exceeded easement rights). Here again, the *conduct* of the transgressor dictates the remedy; property ownership is not a determining factor.

Finally, we are not persuaded that the trial court's removal order places J.A. Renner, Inc. and Allison & Alexander at risk of liability for trespass or damages for entering property they do not own. Don and Faye Alexander, as current owners of the property, have no motive to sue the corporate entities ordered to assist them in removing the encroaching fill. The purchase agreement for the property requires the Alexanders to hold J.A. Renner, Inc. harmless from any liability arising from the Williams Pipeline lawsuit. Similarly,

---

**5.** Rule 92.02(e) provides that an injunction "is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise."

the Alexanders own Allison & Alexander, Inc. and would derive no benefit from suing their own closely-held corporation.

## Conclusion

The judgment of the trial court is affirmed.

All concur.