# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs November 2, 2010

## STATE OF TENNESSEE v. MARIO ANTOWINE MIDDLEBROOKS

**Direct Appeal from the Circuit Court for Hardeman County**
**No. 09-01-0826    J. Weber McCraw, Judge**

**No. W2009-02438-CCA-R3-CD  - Filed May 20, 2011**

The defendant, Mario Antowine Middlebrooks, was convicted by a Hardeman County jury of aggravated robbery, three counts of aggravated kidnapping, possession of a firearm during the commission of a felony, and theft under $10,000. Following a sentencing hearing, the trial court imposed sentences of ten years for the robbery, ten years for each kidnapping, ten years for the possession of a firearm, and two years for the theft. The court further determined that partial consecutive sentencing was warranted and imposed an effective sentence of forty years to be served in the Department of Correction. On appeal, the defendant has raised three issues for our review: (1) whether his convictions for aggravated kidnapping violate due process and are, thus, precluded under *State v. Dixon*; (2) whether the evidence is sufficient to support his kidnapping convictions; and (3) whether the trial court erred in imposing consecutive sentences. Following review of the record, we conclude that the defendant's three aggravated kidnapping conviction are violative of due process principles and, thus, must be vacated. Moreover, we conclude that the trial court did not follow the mandates of our caselaw in its imposition of consecutive sentencing. As such, the case is remanded to the trial court for reconsideration of consecutive sentencing.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed in Part; Reversed in Part and Remanded**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and JERRY L. SMITH, J., joined.

Clifford K. McGown, Jr., Waverly, Tennessee (on appeal); Gary F. Antrican, District Public Defender; and Shana Johnson, Assistant Public Defender (on appeal and at trial), for the appellant, Mario Antowine Middlebrooks.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Senior Counsel; D. Michael Dunavant, District Attorney General; and Joe L. VanDyke, Assistant District

Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Procedural History**

During the afternoon hours, Cortez Beasley had just left the Cash Express in Bolivar, Tennessee, when he noticed two suspicious-looking men enter the business with "cover on their face, beards and mustache and cap." Mr. Beasley also noticed that one of the men was carrying a pistol. As a result of his observations, Mr. Beasley called 9-1-1.

Inside the store, the manager, Shemika Cheairs, saw the two men enter the store and said that she felt like "something was wrong" because they had makeup or something on their faces. As she attempted to reach the store's panic button, the defendant and his accomplice "ran behind the counter and pulled out guns." The defendant and the co-defendant then ordered Ms. Cheairs and the two other employees in the store, Patria Mann and Crystal Hill, at gunpoint, to lie down in the corner out of the way of the cameras. The defendant then ordered Ms. Cheairs to assist him in retrieving the money. While the two were collecting the cash, the co-defendant continued to hold Ms. Mann and Ms. Hill in the corner at gunpoint. After collecting the money from the cash drawer, the defendant demanded that Ms. Cheairs open the safe. Afterward, he ordered her to return to the corner with the other two employees and get on the floor. The three women were instructed to lie there for five or ten minutes before phoning the police. Ms. Cheairs testified that the two men took approximately $5000 from the store.

As the two men exited the Cash Express, police officers, who had been dispatched in response to Mr. Beasley's call, were arriving at the scene. The co-defendant, Quentin Woodland, was immediately apprehended, but the defendant fled on foot. After a short pursuit on foot, the defendant was tackled by police. He continued to resist and had to be tased but was eventually captured. During searches of the two men, officers discovered that they were armed with guns and were in possession of $5997 in cash.

The defendant, along with the co-defendant, was indicted by a Hardeman County grand jury for aggravated robbery, three counts of aggravated kidnapping, possession of a firearm during the commission of a felony, and theft under $10,000. A jury trial was held, and the defendant was found guilty of all counts. Following a sentencing hearing, the trial court imposed ten years for the aggravated robbery, ten years for each kidnapping conviction, ten years for the possession of a firearm, and two years for theft. The court additionally ordered that the kidnapping and possession of a firearm conviction be served consecutively to each other but concurrently to the remaining sentences, for an effective sentence of forty

years in the Department of Correction. Following the denial of his motion for new trial, the defendant filed the instant timely appeal.

## Analysis

On appeal, the defendant presents three issues for our review. First, he contends that his convictions for kidnapping are precluded by the holdings of *State v. Anthony* and *State v. Dixon*. Next, he asserts that the evidence is not sufficient to support his kidnapping convictions. Finally, he contends that the trial court erred in imposing consecutive sentencing.

## I. *State v. Anthony/State v. Dixon*

First, the defendant contends that his convictions for aggravated kidnapping violate due process, because they were "essentially incidental" to the associated aggravated robbery. In *State v. Anthony*, 817 S.W.2d 299, 305 (Tenn. 1991), our supreme court, for the first time, considered "the propriety of a kidnapping conviction where detention of the victim is merely incidental to the commission of another felony, such as robbery or rape." *Id*. at 300. The court acknowledged that a period of confinement technically meeting the definition of kidnapping frequently accompanies such crimes as robbery and rape, and it concluded that a separate kidnapping conviction cannot be supported when "the confinement, movement, or detention is essentially incidental to the accompanying felony." *Id*. at 305. In *State v. Dixon*, 957 S.W.2d 532 (Tenn. 1997), our supreme court observed that:

> *Anthony* and its progeny, however, are not meant to provide the rapist a free kidnapping merely because he also committed rape. The *Anthony* decision should only prevent the injustice which would occur if a defendant could be convicted of kidnapping where the only restraint utilized was that necessary to complete the act of rape or robbery. Accordingly, any restraint in addition to that which is necessary to consummate rape or robbery may support a separate conviction for kidnapping.

*Id*. at 534-35. The *Dixon* court also added a second level of inquiry to the *Anthony* analysis. When a court determines that the confinement is beyond that necessary for the accompanying felony, it must next determine "whether the additional movement or confinement: (1) prevented the victim from summoning help; (2) lessened the defendant's risk of detection; or (3) created a significant danger or increased the victim's risk of harm." *Id*. at 535. Finally, the *Dixon* court emphasized that the focus of any *Anthony* inquiry should be on "the purpose of the removal or confinement and not the distance or duration." *Id*.

In *State v. Richardson*, 251 S.W.3d 438 (Tenn. 2008), our supreme court completely abandoned the "essentially incidental" analysis of *Anthony* and replaced it with the two-part test established in *Dixon*:

> The *Dixon* two-part test fully replaces the *Anthony* "essentially incidental" analysis. As we previously have observed, the *Dixon* test "provides the structure necessary for applying the principles announced in *Anthony*." Although we adhere to the due process principles announced in *Anthony*, we now make clear that the *Anthony* analysis should not be used in conjunction with the *Dixon* two-part test. The *Dixon* test should be used exclusively in all future inquiries.

*Id*. at 443 (citations omitted). The court emphasized:

> [N]o bright line exists for making the threshold determination in the first prong of the *Dixon* test. The inquiry is fact-driven. Distance of the victim's movement and duration or place of the victim's confinement are factors to be considered in determining if the movement or confinement was beyond that necessary to consummate the accompanying felony. . . .

*Id*.

Whether a separate kidnapping conviction violates due process is a question of law to be determined initially by a trial court. *State v. Cozart*, 54 S.W.3d 242, 247 (Tenn. 2001). The standard of review over a trial court's determination is *de novo* with no presumption of correctness. *State v. Fuller*, 172 S.W.3d 533, 536 (Tenn. 2005).

The defendant contends that the record fails to establish any movement or confinement in this case beyond that which was necessary to consummate the aggravated robbery. While the State concedes that the conviction for aggravated kidnapping regarding Ms. Cheairs is violative of due process,[1] it argues that the remaining two convictions are not. The State asserts that the robbery could have been accomplished without holding the two other victims at gunpoint on the floor of the corner of the store.

---

[1] While conceding that the single conviction does violate due process, the State posits a second double jeopardy argument and states that "[t]his case illustrates the ongoing misapprehension of the *Dixon* test for identifying due process violations and calls into question the continued viability of a test that has been proven unworkable in the court." As noted above, our supreme court has again reaffirmed that the test remains in place as our standard. *See Richardson*, 251 S.W.3d at 438.

Comments made by this court in *State v. Jason Lee White* are illustrative of the issue in this case. *See State v. Jason Lee White*, No. M2009-00941-CCA-R3-CD (Tenn. Crim. App., at Nashville, May 12, 2010). In that case, the defendant moved the victim from her initial place of confinement in the bathroom into the employee room in order to have her unlock the safe. *Id*. There the State argued that the movement was not necessary to consummate the aggravated robbery because the defendant could have retrieved the safe key from the victim's pocket rather than requiring the victim to accompany him. *Id*. The court noted that, "[a]lthough we agree that the Defendant's movement of [the victim] to the employee room was not strictly and absolutely necessary to complete the aggravated robbery, our review of *Anthony*, *Dixon*, and *Richardson* lead us to conclude that our supreme court did not intend *Dixon's* first prong to be applied so literally." *Id*. The court went on to note that the first prong "does not require a Defendant to demonstrate that consummation of the applicable underlying felony would have been entirely impossible without the movement or confinement alleged to constitute kidnapping." *Id*.

Testimony establishes that each of the three victims in this case were ordered, at gunpoint, to lie down in a corner of the store where they would be out of the way of the video cameras and were, for a short time, held there at gunpoint. Ms. Cheairs, who was behind the counter of the store when she noticed the men enter, attempted to hit the panic button. To stop her, the defendant and his co-defendant came behind the counter, brandished weapons, and ordered her to the corner. Ms. Mann, who was on the other side of the counter, had a gun placed in her back and was also ordered to the corner. Finally, Ms. Hill testified that she saw the weapons and tried to crawl under her desk. She was pulled out and ordered to the corner as well. Each testified that they felt they were not free to leave. While we would agree with the State that this movement of the victims was not absolutely necessary to accomplish the robbery, as in *White*, we cannot agree that the first *Dixon* prong was intended to be subjected to this very literal approach. Looking to the facts here, the defendants moved the women a very short distance within the same room and held them there for a very short period of time while the robbery was completed. Again, we note that the State conceded on appeal that the conviction with regard to Ms. Cheairs violated due process, and we agree. Moreover, on the facts presented, we conclude that the defendant has successfully demonstrated that the movement of the two additional victims was not beyond that necessary to complete the aggravated robbery. *See Dixon*, 957 S.W.2d at 535 (citing *Anthony*, 817 S.W.2d at 306). As such, consideration of the second prong is not required. Therefore, we conclude that defendant's three aggravated kidnapping convictions do, in fact, violate due process principles and should be vacated.

## II. Sufficiency of the Evidence

Next, the defendant contends that the evidence is insufficient to support his

convictions for aggravated kidnapping. However, a reading of the argument contained in the brief tends to suggest that the defendant's argument is based more on his claim that due process precludes his convictions rather than contending that the State failed to establish the elements of the crime. His entire argument, other than a recitation of standard sufficiency law, is as follows:

> [The defendant] respectfully submits that the evidence is insufficient, as a matter of law, to convict him of aggravated kidnapping. [The defendant] incorporates herein by reference the previous arguments contained in his brief.

As we have previously addressed this argument and concluded that it was meritorious, there is no need to address an actual sufficiency of the evidence claim, as the kidnapping convictions are to be vacated.

## III. Consecutive Sentencing

Finally, the defendant contends that the trial court erred in imposing partial consecutive sentencing in this case. When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a *de novo* review of the record with a presumption that the trial court's determinations are correct. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). This presumption, however, is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *Id*. If our review reflects that the trial court properly considered all relevant factors and if its findings of fact are adequately supported by the record, this court must affirm the sentence "even if [it] would have preferred a different result." *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). "If, however, the trial court applies inappropriate mitigating and/or enhancement factors or otherwise fails to follow the Sentencing Act, the presumption of correctness fails," and review is purely *de novo*. *State v. Carter*, 254 S.W.3d 335, 345 (Tenn. 2008). The burden of showing sentence impropriety is on the defendant on appeal. *Id*.

In conducting a *de novo* review of a sentence, this court must consider: (1) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (f) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; and (g) any statement the defendant wishes to make in the defendant's own behalf about sentencing. T.C.A. § 40-35-210(b) (2006); *see also Carter*, 254 S.W.3d at 343.

It is within the sound discretion of the trial court whether or not an offender should be sentenced to consecutive or concurrent sentences. *State v. James*, 699 S.W.2d 463, 465 (Tenn. Crim. App. 1984). Consecutive sentencing guidelines are set forth in Tennessee Code Annotated section 40-35-115(b), which provides, in relevant part, that a trial court may order sentences to run consecutively if it finds by a preponderance of the evidence that "the defendant is a dangerous offender whose behavior indicates little or not regard for human life and no hesitation about committing a crime in which the risk to human life is high." T.C.A. § 40-35-115(b)(4) (2006). In *State v. Wilkerson*, 905 S.W.2d 933 (Tenn. 1995), our supreme court set forth additional requirements for consecutive sentencing when relying upon the fact that the defendant is a "dangerous offender." Accordingly, in order to base consecutive sentencing on the dangerous offender category, the trial court must also find that the term imposed is: (1) necessary to protect the public from further criminal acts by the offender; and (2) reasonably related to the severity of the offenses committed. *Id*. at 938. The reasoning behind this requirement for additional findings "arises from the fact that of all the categories for consecutive sentencing, the dangerous offender category is the most subjective and hardest to apply." *State v. Lane*, 3 S.W.3d 456, 461 (Tenn. 1999).

In imposing consecutive sentencing in this case, the trial court made the following findings on the record:

> With regard to findings on consecutive sentencing, the [c]ourt does find pursuant to [Tennessee Code Annotated section] 40-35-115 that the defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high. Again, the [c]ourt finds that based on his prior record where he had an attempted murder as a conviction. Also, this involved robbery where weapons were used. Therefore, the [c]ourt relies upon that particular statute, [Tennessee Code Annotated section] 40-35-115(b)(4), to be more specific, in considering consecutive sentences.

The defendant's argument that the trial court erred in imposing consecutive sentencing is based solely upon his assertion that the trial court erred in applying the enhancement factor that the crime had more than one victim to the aggravated robbery conviction and erred in finding that the defendant had no hesitation about committing a crime when the risk to human life was high. According to the defendant, "[g]iven the [c]ourt's error in considering both of these factors, the sentences should be concurrent to one another rather than consecutive." His argument fails to contest the findings made by the trial court regarding the defendant's status as a dangerous offender, which is the relevant question in determining whether consecutive sentencing was proper. As such, his asserted argument is misplaced.

Turning to the record before us, we note that the trial court based its imposition of consecutive sentencing solely upon the basis that the defendant was a dangerous offender. However, the record does not indicate that the trial court considered and made the required findings with regard to the *Wilkerson* factors. As such, review of the issue would be *de novo*. While we could conclude, based upon the defendant's history of violence and his use of a deadly weapon in this case, that the public does require protection and that the term of the sentence was reasonably related to the severity of the offenses in this case based upon the facts, we conclude that remand is the better course of action in this case. In reaching the effective sentence of forty years in this case, the trial court ordered that the three aggravated kidnapping convictions and the possession of a firearm conviction be served consecutively to each other, with the remaining convictions being served concurrently. As such, with the order that the kidnapping convictions be vacated, no actual consecutive sentencing remains in place. Thus, we choose to remand to the trial court for its consideration of whether the remaining three convictions for aggravated robbery, possession of a firearm, and theft should be served consecutively or concurrently.

## CONCLUSION

Based upon the foregoing, the defendant's convictions for aggravated kidnapping are vacated. The remaining convictions are affirmed, and this case is remanded for reconsideration of consecutive sentencing.

_____
JOHN EVERETT WILLIAMS, JUDGE