IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 8, 2011

**STATE OF TENNESSEE v. CALVIN OLIVER**

**Direct Appeal from the Circuit Court for Marshall County**
**No. 14989     Robert Crigler, Judge**

**No. M2010-01135-CCA-R3-CD - Filed July 8, 2011**

The defendant, Calvin Oliver, appeals his effective sentence of twenty-two years in the Department of Correction. On appeal, he asserts that the trial court erred in the imposition of consecutive sentencing. Following review of the record, we find no error and affirm the sentences as imposed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and NORMA MCGEE OGLE, J., joined.

Hershell D. Koger, Pulaski, Tennessee, for the appellant, Calvin Oliver.

Robert E. Cooper, Jr., Attorney General and Reporter; Nicholas W. Spangler, Assistant Attorney General; Charles Frank Crawford, Jr., District Attorney General; and Weakley E. (Eddie) Barnard, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Procedural History**

The relevant facts underlying the defendant's convictions, as recited by this court on direct appeal, are as follows:

> On the night of March 18, 2002, the victim and her boyfriend were in bed when some men kicked open the victim's back door and forced their way into her home. The victim's boyfriend was awakened, poked in the back with a rifle, and told that he was going to be shot. The gun also was pointed at the victim, the victim's young daughter, and another woman who was staying in

the home. The victim gave the men her pocketbook, and they fled the scene. When the police arrived, they found masks, gloves, and a rifle. The police also stopped a car that they had seen in the area immediately before the crimes and arrested two of the robbers. At some point, the police arrested the defendant, who gave a statement and admitted his involvement in the offenses.

*State v. Calvin Jerome Oliver*, No. M2002-02438-CCA-R3-CD (Tenn. Crim. App. at Nashville, Aug. 21, 2003). Thereafter, on June 19, 2002, the defendant pled guilty to aggravated robbery, aggravated burglary, two counts of attempted aggravated robbery, and three counts of aggravated assault. Subsequently, the trial court merged the two attempted aggravated robbery convictions into the aggravated robbery conviction and sentenced the defendant, as a Range II offender, to eighteen years for the aggravated robbery conviction. The court also imposed sentences of seven years for the aggravated burglary conviction and eight years for each of the aggravated assault convictions. Each of these sentence lengths was based upon the court's finding of various enhancement factors. The court also imposed partial consecutive sentencing and ordered the defendant to serve his effective sentence of twenty-six years in the Department of Correction.

The defendant's convictions and sentences were then affirmed on direct appeal by a panel of this court. *Id*. Likewise, the denial of the defendant's petition for post-conviction relief was also affirmed on appeal. *Calvin Jerome Oliver v. State*, No. M2004-01564-CCA-R3-PC (Tenn. Crim. App. at Nashville, Mar. 3, 2005). The defendant then filed a petition for habeas corpus relief in the federal courts, alleging that he was denied the effective assistance of counsel in sentencing because trial counsel failed to introduce expert testimony regarding the defendant's mental health condition as a mitigating factor. The federal court granted the defendant's petition and remanded the case to the trial court for a new sentencing hearing. *Calvin Oliver v. Tony Parker, Warden*, No. 1:05-00058 (M.D. Tenn., Dec. 21, 2007). A re-sentencing hearing was held, at which the defendant expressed his desire to be sentenced under the law prior to changes made by the 2005 sentencing amendment. The trial court again found applicable enhancing factors and sentenced the defendant to an effective sentence of twenty-six years. The defendant then appealed the imposed sentence to this court. *State v. Calvin Oliver*, No. M2008-01824-CCA-R3-CD (Tenn. Crim. App. at Nashville, Feb. 26, 2010). As relevant here, a panel of this court summarized the proof presented at the re-sentencing hearing as follows:

According to the presentence report [which was introduced into evidence by the State], [the] Defendant, who was twenty-four years old at the time of sentencing, committed his first offense of shoplifting when he was eleven years old. When he was twelve years old, Defendant had three juvenile adjudications for theft of property valued at $500 or less, and one juvenile

-2-

adjudication for theft of property valued between $500 and $1,000. Defendant had one juvenile adjudication the following year for criminal trespassing, and he was found in violation of his probation when he was fourteen years old. When he was sixteen years old, Defendant had one juvenile adjudication for joyriding. In addition, the report revealed that Defendant was placed in the custody of the Department of Human Services on several occasions and escaped numerous times from the facility in which he was then residing. On one occasion, Defendant stole the facility's van to effectuate his escape. Defendant was apprehended on each occasion and returned to the Department's custody. Defendant was released from the Wilder Youth Center on December 19, 1995 when he turned eighteen.

In 1996, Defendant was convicted of delivery of more than 0.5 grams of cocaine, a Class B felony, and was sentenced to ten years. In 1996, Defendant was also convicted of theft of property valued between $1,000 and $10,000, a Class D felony; burglary of a vehicle, a Class E felony; and simple assault, a Class A misdemeanor. He was sentenced to three years for the theft conviction, two years for the burglary conviction, and eleven months, twenty-nine days for the misdemeanor conviction. In 1997, Defendant was convicted of criminal impersonation, a Class B misdemeanor. In 2002, Defendant was convicted of theft of property valued at $500 or less, a Class A misdemeanor, and evading arrest, a Class A misdemeanor. Defendant was sentenced to eleven months twenty-nine days for each conviction. His sentences were suspended after service of a short period of time in confinement, and Defendant was placed on probation. According to the presentence report, Defendant was on probation for these misdemeanor offenses when he committed the charged offenses. The presentence report indicates that Defendant was sentenced in 1996 to ten years for his drug conviction, and he was transferred to Boot Camp later that year. Defendant was released from Boot Camp on probation on February 12, 1997. His probation was revoked on October 8, 1997, and he was returned to the Department of Correction. The presentence report indicates that Defendant was paroled on September 10, 2001, for this conviction.

*Id*. The State also called one of the victims in the case, who testified regarding what she termed as "the most frightening event of her life." The victim gave testimony concerning the crimes, as well as their devastating effect on her and her family. The State also called the lead detective in the case, who testified that, while they had apprehended other participants, the defendant remained at large for two months.

The defendant testified, as well as Dr. Pamela Auble, a clinical neuropsychologist who conducted a mental evaluation of the defendant. Dr. Auble testified that the defendant was mentally retarded and had been so certified since he was nine years old. She further related that, because of his mental retardation, the defendant was easily manipulated and displayed poor judgment, describing him as "impulsive" and "a follower." The defendant testified that he had initially been reluctant to join the group in the robbery but that his friend kept begging him to go. He acknowledged that he was a participant but claimed, in contradiction to facts given by his co-defendants, that he remained outside the home as a lookout. He went on to testify that most of his prior crimes were committed at the urging or encouragement of others.

This court noted that, because the defendant elected to be sentenced under pre-2005 law and because the trial court had again applied enhancement factors not found by a jury, the sentences in the case were in violation of *Blakely v. Washington*. *See* 542 U.S. 296 (2004) (imposition of a greater sentence based upon factual determinations made by a trial judge, rather than by a jury, violates the Sixth Amendment). Accordingly, the case was remanded, and a second re-sentencing hearing was held. The State again introduced the presentence report into evidence without objection. Likewise, a transcript of the proof, as summarized above, of the prior re-sentencing hearing was also admitted into evidence. No other proof was presented, and the defendant again elected to be sentenced pursuant to the law in effect at the time he committed the crimes.

The trial court concluded that there were two applicable mitigating factors, those being the defendant's mental condition and his confession, although the court felt they were entitled to slight weight. With regard to enhancement factors, the court, as limited by law, applied only the factor for a prior criminal history. However, the trial court noted the defendant's extensive history and stated that the factor carried great weight. The trial court then imposed a Range II fifteen-year sentence for the aggravated robbery and seven-year sentences for each of the remaining convictions. Based on the imposition of partial consecutive sentencing, the trial court imposed an effective sentence of twenty-two years in the Department of Correction. The defendant has now timely appealed this sentence.

**Analysis**

On appeal, the defendant raises the single issue of whether the trial court erred in imposing consecutive sentencing. On appeal, the party challenging the sentence imposed by the trial court has the burden of establishing that the sentence imposed is improper. T.C.A. § 40-35-401 (2010), Sentencing Comm'n Cmts; *see also State v. Arnett*, 49 S.W.3d 250, 257 (Tenn. 2001). When a defendant challenges the length, range, or manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that the determinations made by the court from which the appeal is taken are

correct. T.C.A. § 40-35-401(d). This presumption of correctness, however, "'is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances.'" *State v. Carter*, 254 S.W.3d 335, 344-45 (Tenn. 2008) (quoting *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991)). "If, however, the trial court applies inappropriate mitigating and/or enhancement factors or otherwise fails to follow the Sentencing Act, the presumption of correctness fails," and our review is *de novo*. *Id*. at 345 (quoting *State v. Shelton*, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992); *State v. Pierce*, 138 S.W.3d 820, 827 (Tenn. 2004)).

It is within the sound discretion of the trial court to determine whether an offender should be sentenced to consecutive or concurrent sentences. *State v. James*, 699 S.W.2d 463, 465 (Tenn. Crim. App. 1984). Consecutive sentencing guidelines are set forth in Tennessee Code Annotated section 40-35-115(b), which provides, in relevant part, that a trial court may order sentences to run consecutively if it finds by a preponderance of the evidence that the defendant "is an offender whose record of criminal activity is extensive" or "is sentenced for an offense committed while on probation." T.C.A. § 40-35-115(b)(2),(6) (2010). Additionally, the trial court must "specify the reasons" behind its imposition of a consecutive sentence. *See* Tenn. R. Crim. P. 32(c)(1). Finally, we note that the criteria listed in the statute are stated in the alternative; as such, only one need exist to support the appropriateness of consecutive sentencing.

In this case, the trial court made the following findings with regard to consecutive sentencing:

> I still - - maybe getting the cart ahead of the horse, but before I forget it, I would also find, under [40-35-115], the defendant is an offender whose record of criminal activity is extensive.
>
> Also, it may be number 6 now, but at the time it was like - - you are right, it is number 6, that the offense was committed while on probation, in this case, parole, I guess.
>
> At any rate, for either of those independently, if I am in error in finding either of those apply, I find that either . . . 2 or 6 is sufficient in and of itself for consecutive sentencing, and that the sentence I am intending to impose, that sentence, effective sentence, will be justly deserved in relationship to the criminal conduct involved in this case, and no greater than that deserved.

On appeal, the defendant challenges the court's findings with regard to both factors. First, with regard to factor (6), the defendant argues that use of this factor was improper

because the court applied it based upon the fact that he was on parole rather than probation. We agree with the defendant's contention that probation and parole are not interchangeable in this context, as the statute clearly states that to impose consecutive sentencing using this factor requires a finding that the defendant was on probation. *See State v. Hepburn*, No. M2008-01979-CCA-R3-CD (Tenn. Crim. App. at Nashville, Jul. 23, 2010). We also agree that the trial court in the instant case did, in fact, make the statement that he was relying on the factor because the defendant was on parole at the time the instant offenses were committed.

However, based upon our entire reading of the record, we cannot conclude that this precludes application of the factor. While the trial court might have made an incorrect statement, a reading of the transcript, as well as the prior sentencing transcript, reveals that the court was well aware that the defendant was on probation at the time. A lengthy discussion was held with regard to the matter. Thus, the court's ambiguous reference to the defendant's parole status is irrelevant because the record establishes that the court was aware of the defendant's probationary status. Moreover, there is no dispute in the record that the defendant was on probation for a misdemeanor theft conviction at the time he committed these offenses. Thus, we conclude that this was a proper basis for the imposition of consecutive sentencing.

Regardless, even had we found the above factor to be in error, the trial court also relied upon the defendant's extensive criminal history in imposing the sentences. As we noted above, the existence of a single factor is sufficient to support the imposition of consecutive sentences. The defendant challenges application of this factor as well. However, we must disagree with the premise of his argument. He asserts that the b(2) factor, that the defendant is an offender whose record of criminal activity is extensive, actually "applies only in the situation where the Defendant's instant offenses are extensive and continuing, in contrast to a situation where the Defendant has an extensive prior criminal history. Here, all the instant convictions are related to a single criminal episode." This interpretation of the statute is simply erroneous and not in accord with the case law of this state. *See State v. Palmer*, 10 S.W.3d 638 (Tenn. Crim. App. 1999) (Tennessee Code Annotated section 40-35-115(b)(2) applies to offenders who have an extensive history of criminal convictions and activities, not just to a consideration of the offenses before the sentencing court.)

The factor set forth in Tennessee Code Annotated section 40-35-115(b)(2), as it literally states, is to be applied for offenders who have an extensive record of criminal activity over the course of their criminal careers. It is not limited to apply only to those offenders who commit acts that are extensive and continuing. Here, the record clearly reveals that the factor was properly applied in the defendant's case. The defendant began his

history of criminal activity at age eleven and committed an assortment of misdemeanors and felonies between that time and the date of the instant offenses. A juvenile record of criminal conduct may properly be considered in assessing a suitable sentence after a felony conviction by an adult. *State v. Stockton*, 733 S.W.2d 111, 112-13 (Tenn. Crim. App. 1986). These adjudications and convictions are clearly set forth in the record and were considered by the trial court. We find no error in the court's finding, as the record sufficiently establishes that the defendant's history of criminal activity was extensive. As such, the defendant is not entitled to relief.

## CONCLUSION

Based upon the foregoing, the sentences are affirmed as imposed.

_____
JOHN EVERETT WILLIAMS, JUDGE