IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 8, 2011

## STEPHEN ANTHONY SCOTT v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Montgomery County**
**No. 40200176      Michael R. Jones, Judge**

**No. M2010-00448-CCA-R3-PC - Filed August 16,2011**

The defendant, Stephen Anthony Scott, appeals the sentencing decision of the Montgomery County Circuit Court. The defendant was convicted of aggravated robbery, a Class B felony; attempted aggravated robbery, a Class C felony; especially aggravated kidnapping, a Class A felony; aggravated kidnapping, a Class B felony; and attempted robbery, a Class D felony. The defendant was originally sentenced to an effective term of thirty-seven years in the Department of Correction. After multiple appeals and new filings in both state and federal courts, the defendant's case was eventually sent back to the trial court for re-sentencing in accordance with *Blakely v. Washington*, 542 U.S. 296 (2004). A resentencing hearing was held, and the trial court determined that one enhancement factor was applicable, that being that the defendant had juvenile adjudications which would have been felony convictions if they had occurred when the defendant was an adult. As such, the trial court, applying partial consecutive sentencing, resentenced the defendant to an effective sentence of thirty-four years and six months. On appeal, the defendant raises multiple sentencing issues for our review: (1) whether the imposed sentences are still in violation of *Blakely,* based upon the application of the single enhancement; (2) whether the imposed sentences are illegal as the State failed to file notice of intent to seek enhancement factors; (3) whether the court erred in imposing consecutive sentencing; (4) whether the court erred in treating a juvenile adjudication as a felony conviction for enhancement purposes; and (5) whether the court erred in failing to offer the defendant the right to waive his *ex post facto* rights and be sentenced pursuant to the 2005 amendments to the Sentencing Act. Following review of the record, we conclude that the trial court erred in applying the enhancement factor to the defendant's sentences. Accordingly, we conclude that the presumptive minimum sentences for each conviction must be imposed in this case, and we remand to the trial court for entry of corrected judgments to so reflect. Additionally, we conclude that the defendant's others issues are not meritorious and that no relief is warranted.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part; Vacated and Remanded in Part**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which D. KELLY THOMAS, JR. and CAMILLE R. MCMULLEN, JJ., joined.

Stephen Anthony Scott, Tiptonville, Tennessee, Pro Se.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; John Wesley Carney, Jr., District Attorney General; and Daniel Brollier, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Procedural History

The relevant facts underlying the defendant's convictions, as recited on direct appeal, are:

> On the evening of December 15, 2001, Laurie Goodman and Jason McClain were visiting at the home of Jay and Mary Hutchison. At about 11:00 p.m., Goodman and McClain left the residence. On his way to take Goodman home, McClain stopped to pick up the defendant to pursue a marijuana transaction.

> The defendant directed McClain to drive to an apartment complex where the marijuana was supposedly located. Upon arrival, the defendant exited the vehicle and proceeded into the complex to retrieve the marijuana. However, he returned with a gun and demanded money from both Goodman and McClain. Since the couple could only produce less than ten dollars, the defendant became agitated and slapped McClain in the ear with the gun. The defendant then forced McClain to drive him to get additional money.

> Unsure of a solution, McClain phoned the Hutchisons and drove back to their home. Jay Hutchison walked outside his home to meet McClain. With McClain at gunpoint, the defendant then demanded money from Jay Hutchison. However, Hutchison made it back inside his home and told his wife to phone the police.

> The defendant then drove away with Goodman and McClain inside the car. Briefly thereafter, the defendant slammed on the brakes, demanded the watch and necklace of McClain, and ran off, leaving the couple sitting in the car.

*State v. Stephen Anthony Scott*, No. M2004-00927-CCA-R3-CD (Tenn. Crim. App. at Nashville, June 7, 2005).

Based upon these actions, the defendant was convicted by a Montgomery County jury of aggravated robbery, attempted aggravated robbery, especially aggravated kidnapping, two counts of aggravated kidnapping, and attempted robbery. He was then sentenced to serve a total effective sentence of thirty-seven years in the Department of Correction. The defendant filed a direct appeal to this court, and the case began its long journey through multiple courts.

On direct appeal, the defendant raised the issue of sufficiency of the evidence and sentencing issues. Specifically, he argued that consecutive sentencing was improper and that his sentence was enhanced in violation of *Blakely v. Washington*. After review, it was concluded that consecutive sentencing was proper, based upon the determination that the defendant was a dangerous offender, and that the *Blakely* issue was waived. However, this court did remand for merger of two offenses and for re-sentencing on the aggravated kidnapping count in light of a mitigating factor. *Id*. The defendant's application for permission to appeal was subsequently denied by the Tennessee Supreme Court in October 2005. On February 24, 2006, the defendant was resentenced to nine years on the kidnapping charge. From what we can glean from the record, no direct appeal was taken from that sentence.

Next, on March 2, 2006, the defendant filed a petition for post-conviction relief, which was denied by order of the trial court on November 8, 2006. A panel of this court affirmed the denial, and the Tennessee Supreme Court denied permission to appeal. *Stephen Anthony Scott v. State*, No. M2007-00030-CCA-R3-PC (Tenn. Crim. App. at Nashville, Jan. 7, 2008), *perm. app. denied* (Tenn., Apr. 7, 2008). The defendant also filed a "Motion to Recall the Mandate and Application for Extraordinary Appeal" in the Tennessee Supreme Court seeking to recall the mandate for the purpose of raising *Blakely* sentencing issues. His request was denied. *Stephen Anthony Scott v. State*, No. M2004-00927-SC-R11-CD (Tenn., May 12, 2008). According to the defendant, he then filed a petition to reopen his post-conviction petition in the Montgomery County Circuit Court. The court denied the petition, and the defendant then appealed to this court, which ruled that the "trial court did not abuse its discretion in denying the petition." *Stephen Anthony Scott v. State*, No. M2004-01755-CCA-R28-CO (Tenn. Crim. App. at Nashville, Sept. 3, 2008).

Thereafter, the defendant, in further pursuit of his challenge to the enhanced sentences he received, filed a petition for the writ of habeas corpus in the United States District Court for the Middle District of Tennessee. In a November 9, 2009 order, the district court granted habeas corpus relief on the defendant's sentencing claim, based on a violation of *Blakely*. The court then ordered the State to resentence the defendant in accordance with *Blakely*

within ninety days from the date of service of the order. *Stephen A. Scott v. Tony Parker*, No. 3:09-0252 (M.D. Tenn., Nov. 9, 2009).

Subsequently, on January 28, 2010, the Montgomery County Circuit Court held a resentencing hearing on the matter. Although the defendant's counsel submitted a brief regarding the resentencing and arguments were made, no new evidence was presented. The trial court then asked defense counsel which law the defendant wished to be sentenced under, *i.e.*, did he wish to waive his *ex post facto* rights and be sentenced under the amended sentencing law. Defense counsel responded that the court should sentence the defendant under the 2001 law in effect at the time of the commission of the offenses.

After hearing the arguments, the court made the following statements:

I have read the Court of Criminal Appeals opinion, the direct appeal as well as the [post-conviction relief]. I also remember this trial very vividly even though it now almost seven years old. Mr. McClain and Ms. Goodman - didn't exactly tell the truth in the beginning of this as to what really happened, as it was a marijuana deal, but the jury still believed them even with [trial counsel's] ability to prove that they had lied previously to the police. They convicted . . . [the defendant] of some very, very serious offenses.

The presentence report - a very large file, I haven't been able to find it. The only thing that is really important is a juvenile adjudication. The [c]ourt is going to find that as an enhancement factor. Pursuant to that presentence report, he has a juvenile conviction for aggravated robbery, aggravated assault, aggravated kidnapping. I have frankly considered that as one matter, as an aggravated robbery. I have found that as an enhancement factor. That is [an] enhancement factor as to all counts. . . . I am not going to find any other enhancement factors.

The court also found in mitigation with regard to the two aggravated kidnapping convictions that the defendant had released the victims unharmed. The trial then imposed the following sentences: (1) aggravated robbery - ten years; (2) attempted aggravated robbery - four years; (3) especially aggravated kidnapping - twenty-two years and six months; (4) aggravated kidnapping - nine years; and (5) attempted robbery - three years.

The trial court went on to reject defense counsel's argument that imposing consecutive sentencing absent jury findings was also a violation of *Blakely*. The court noted that:

. . . I want to make clear on the record, it is my opinion that I have to follow

the orders of the State Supreme Court that *Blakely* does not apply for consecutive sentencing; therefore, this order from the District Court did not really require that I resentence in terms of consecutive or not? However, I have not changed my opinion whatsoever that this Defendant is a dangerous offender and I set forth those factors under *Wilkerson* that were approved by the Court of Criminal Appeals, and I am not changing my opinion on that.

The court then, imposing partial consecutive sentencing, sentenced the defendant to an effective sentence of thirty-four years and six months in the Department of Correction. Following the withdrawal of counsel, the defendant filed a *pro se* notice of appeal challenging the sentences.

## Analysis

On appeal, the defendant has presented five issues involving sentencing for our review: (1) whether his sentences were again enhanced in violation of *Blakely*; (2) whether the sentences are illegal as the State failed to file notice of intent to enhance; (3) whether the trial court erred in imposing consecutive sentencing; (4) whether the trial court erred in treating a juvenile adjudication as a felony conviction for enhancement purposes; and (5) whether the court erred by not offering the defendant the opportunity to waive his *ex post facto* rights and be sentenced pursuant to the amended act. Again, as noted, our review of these issues is to be pursuant to the 1989 Sentencing Act as it existed prior to the adoption of the 2005 sentencing amendments.

On appeal, the party challenging the sentence imposed by the trial court has the burden of establishing that the sentence imposed is improper. T.C.A. § 40-35-401, Sentencing Comm'n Cmts; *see also State v. Arnett*, 49 S.W.3d 250, 257 (Tenn. 2001). When a defendant challenges the length, range, or manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that the determinations made by the court from which the appeal is taken are correct. T.C.A. § 40-35-401(d). This presumption of correctness, however, "'is conditioned upon the affirmative showing in the record that the trial court considering the sentencing principles and all relevant facts and circumstances.'" *State v. Carter*, 254 S.W.3d 335, 344-45 (Tenn. 2008) (quoting *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991)). "If, however, the trial court applies inappropriate mitigating and/or enhancement factors or otherwise fails to follow the Sentencing Act, the presumption of correctness fails," and our review is *de novo*. *Carter*, 254 S.W.3d at 345 (quoting *State v. Shelton*, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992); *State v. Pierce*, 138 S.W.3d 820, 827 (Tenn. 2004)).

In conducting a *de novo* review of a sentence, this court must consider: (1) the

evidence, if any, received at the trial and the sentencing hearing; (2) the presence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors in sections 40-35-113 and 40-35-114; (6) any statements the defendant wishes to make in the defendant's own behalf about sentencing; and (7) the potential for rehabilitation and treatment. T.C.A. § 40-35-210(b) (2003); *see also State v. Imfeld*, 70 S.W.3d 698, 704 (Tenn. 2002).

Under the pre-2005 statutory sentencing scheme, the trial court was required to begin at the presumptive sentence within the applicable range and then to increase or decrease the sentence based upon findings of enhancement or mitigating factors. *Carter*, 254 S.W.3d at 342. For all felony sentences, the presumptive sentence was the minimum within the range, except for Class A felonies, which were to start at the mid-point in the range. T.C.A. § 40-35-210(c). The weight the trial court afforded any applicable enhancement and mitigating factors was left to the trial court's discretion. *Carter*, 254 S.W.3d at 342.

However, as is now well established in our caselaw, the pre-2005 Sentencing Act was held unconstitutional as it violated a defendant's constitutional right to a jury trial. In *Blakely*, the United States Supreme Court held that, "'[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'" *Blakely*, 542 U.S. at 301 (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)). Thus the "statutory maximum" to which a trial court may sentence a defendant is not the maximum sentence after application of appropriate enhancement factors but, rather, other than the fact of a prior conviction, the "maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Id*. at 303. As such, under *Blakely*, the "statutory maximum" sentence which may be imposed is the presumptive sentence applicable to the offense. *See id*. The presumptive sentence may be exceeded without the participation of the jury only when the defendant has a prior conviction or when an otherwise applicable enhancement factor was reflected in the jury's verdict or was admitted by the defendant. In *State v. Gomez*, 239 S.W.3d 733 (Tenn. 2007) (*Gomez II)*, our supreme court, after much litigation, recognized that "to the extent the [1989 Criminal Sentencing] Reform Act permitted enhancement based on judicially determined factors other than the fact of a prior conviction, it violated the Sixth Amendment." *Gomez II*, 239 S.W.3d at 740.

## I. Enhancement of Sentences

The defendant's first contention is that the trial court's application of the enhancement factor that the defendant had juvenile adjudications for violent offenses, which would have

been felonies if committed as an adult, still violated the holding of *Blakely* and its progeny. According to the defendant, by applying the factor, the trial court "did not follow the mandates of the district court to 'resentence in accordance with *Blakely*.'" He asserts that each of his sentences should have been reduced to the presumptive minimum sentence within the range for each offense. The State counters that the sentences are not illegal in light of *Blakely* because the juvenile adjudication factor "was an appropriate enhancement factor for the court to consider, as it is of the type - - prior criminal adjudicated conduct - - for which judicial fact-finding has been expressly retained under *Blakely*." However, the State acknowledges that "various panels of this Court have concluded that 'juvenile adjudications do not qualify as prior convictions under *Blakely*.'"

The State is correct that this court has explicitly stated that "prior juvenile adjudications may withstand *Blakely* scrutiny only if the defendant unequivocally admits at trial or at the sentencing hearing to the commission of an offense what would be a felony if committed as an adult." *State v. Calvin Jerome Oliver*, No. M2008-01824-CCA-R3-CD (Tenn. Crim. App. at Nashville, Feb. 26, 2010). However, the State further contends that the court noted an exception to the requirement, which is when there has been "a factual acknowledgment in the presentence report when the presentence report is introduced as an exhibit at the sentencing hearing without objection." *See State v. Anthony Riggs*, M2007-02322-RM-CD (Tenn. Crim. App. at Nashville, May 7, 2008). The State asserts that because the presentence report in this case reflected the prior juvenile adjudication and was admitted without objection, the exception applies. We disagree.

The State's argument relies heavily on the *Oliver* case. However, we conclude that that reliance is misplaced. In this case, the defendant made a statement while testifying at trial that he did, in fact, steal a vehicle during an escape from state custody. It was this verbal admission, not the unobjected admission of the presentence report that the court looked to. While we agree with the State that application of an enhancement factor is allowed if there has been "a factual acknowledgment in the presentence report when the presentence report is introduced as an exhibit at the sentencing hearing without objection," we cannot agree with their interpretation of what that means.

In our opinion, the mere fact that the presentence report reflects that there were juvenile adjudications and is admitted without objection is not an "unequivocal admission," and we cannot conclude that such an interpretation complies with Sixth Amendment purposes. Application of this factor is somewhat akin to application of the factor for previous unwillingness to comply with the conditions of a prior sentence involving release in the community. The presentence report can accurately reflect and allow for a factual determination of both. However, our supreme court has stated that it was error to apply the previous unwillingness to comply factor absent a jury finding or an admission by the

-7-

defendant. *State v. Phedrek T. Davis*, 266 S.W.3d 896 (Tenn. 2008); *see also State v. Randall A. Myers*, No. E2007-01810-CCA-R3-CD (Tenn. Crim. App. at Knoxville, Jan. 5, 2009). We likewise conclude that application of the juvenile adjudication factor based solely on the presentence is error and violates a defendant's constitutional rights. As such, the trial court in the instant case erred in applying the factor to each of the defendant's convictions. As this was the only factor applied, the sentences must be reduced to the presumptive minimum sentence for each respective conviction.

## II. Notice of Intent to Seek Enhancement

Next, the defendant contends that the sentences imposed in this case are "illegal because the State failed to file notice of enhancements per Tennessee Rules of Criminal Procedure 12.03 and [Tennessee Code Annotated section] 40-35-202. . . ." The defendant, in addition to his complaint that he was not given proper notice that his prior juvenile adjudications would be used for enhancement purposes, also complains that there was no evidence of the conviction presented at the re-sentencing hearing. He does acknowledge that, in relying upon the prior adjudication, the trial court referenced the presentence report which was presented at the prior hearing in the matter.

Initially, we would note that the issue has become moot based upon our above determination that the trial court erred upon relying on the prior adjudication for enhancement purposes. Moreover, even if we were to address the defendant's argument, we would conclude that it was misplaced. Rule 12.3 of the Rules of Criminal Procedure and Tennessee Code Annotated section 40-35-202 refer to procedures for providing notice of sentencing as a multiple, persistent, or career offender. That was not an issue in this case, as there was no dispute that the defendant had no prior adult convictions and would be sentenced as a standard offender. Additionally, we cannot find fault with the trial court for its reliance upon a presentence report that was admitted at a prior proceeding in the case, as well as discussed by this court in a prior appeal. The defendant has failed to show his entitlement to relief upon this ground.

## III. Consecutive Sentencing

Next, the defendant contends that the trial court erred in imposing consecutive sentencing based upon a failure to include its finding with regard to the *Wilkerson* factors required to support the conclusion that the defendant was a dangerous offender. At the re-sentencing hearing in this case, the trial court made the following statements:

> I have not changed my opinion whatsoever that this defendant is a
> dangerous offender and I set forth those factors under *Wilkerson* that were

-8-

approved by the Court of Criminal Appeals, and I am not changing my opinion on that. Therefore, Counts One, Two and Three are concurrent with each other. Count Four is consecutive to Count Three. Count Seven is consecutive to County Four. . . .

It is within the sound discretion of the trial court to determine whether an offender should be sentenced to consecutive or concurrent sentences. *State v. James*, 699 S.W.2d 463, 465 (Tenn. Crim. App. 1984). Consecutive sentencing guidelines are set forth in Tennessee Code Annotated section 40-35-115(b), which provides, in relevant part, that a trial court may order sentences to run consecutively if it finds by a preponderance of the evidence that "the defendant is a dangerous offender whose behavior indicates little or not regard for human life, and no hesitation about committing a crime in which the risk to human life is high." T.C.A. § 40-35-115(b)(4) (2006). In *State v. Wilkerson*, 905 S.W.2d 933 (Tenn. 1995), our supreme court set forth additional requirements for consecutive sentencing when relying upon the fact that the defendant is a "dangerous offender." Accordingly, in order to base consecutive sentencing on the dangerous offender category, the trial court must also find that: (1) the term imposed is necessary to protect the public from further criminal acts by the offender; and (2) the term imposed is reasonably related to the severity of the offenses committed. *Id*. at 938. The reasoning behind this requirement for additional findings "arises from the fact that of all the categories for consecutive sentencing, the dangerous offender category is the most subjective and hardest to apply." *State v. Lane*, 3 S.W.3d 456, 461 (Tenn. 1999).

Although not argued on appeal, the defendant pursued a theory at the re-sentencing hearing that imposition of consecutive sentencing violated the dictates of *Blakely* and its progeny. We note that that issue has been settled by our courts, who have consistently held that the *Blakely* line of cases does no apply to consecutive sentencing determinations. *State v. Scarborough*, 300 S.W.3d 717, 734 (Tenn. Crim. App. 2009). However, the defendant's only contention on appeal is that the trial court failed at the re-sentencing hearing to specifically reiterate its previous findings with regard to the *Wilkerson* dangerous offender factors.

We must conclude that this argument is misplaced. The trial court was not required to reconsider or reiterate findings which had previously been made and affirmed. The dictates of the federal district court were that the defendant be resentenced in compliance with *Blakely*. That did not involve reconsideration of the consecutive sentencing issue by the court. Nonetheless, the trial court in the instant case made the statements on the record that it considered consecutive sentencing and concluded that nothing had changed from its previous determination with regard to the fact that the defendant was a dangerous offender. The trial court stated that it had previously determined the defendant to be a dangerous

offender and made the specific *Wilkerson* findings to support that decision. Indeed, as noted by the State, the initial direct appeal in this case notes that the trial court made the required findings and affirmed the trial court's finding in that regard. The defendant is not entitled to relief on this issue.

## IV. Treatment of Juvenile Adjudication as a Felony for Enhancement Purposes

The defendant next asserts that the "trial court erred in treating a juvenile adjudication as a felony conviction for enhancement purposes." We must note at this juncture that we are somewhat unclear as to the exact argument being asserted by the defendant. Based upon a reading of his brief, we conclude that his major contention is that juvenile adjudications should not be used to enhance subsequent sentences as these juvenile adjudications are more civil in nature and are not subject to the same constitutional projections as felony convictions. From this, we can conclude only that he is asserting that enhancement factor 21, that the defendant has prior juvenile adjudications which would have been felonies if committed as an adult, is illegal or unconstitutional.

The legislature of our state has passed and implemented certain enhancement factors which may be applied to increase sentences for criminal defendants in Tennessee. Our supreme court, through discussion and findings in our caselaw, has implicitly found these factors do not violate a person's constitutional rights. We are bound by these holdings. As an aside, we would note that the defendant's argument is flawed. The factor he appears to be challenging only states that prior juvenile adjudications which would have been felonies may be considered as an enhancement factor. It does not state that the prior adjudications are to be treated as prior felony convictions under the enhancement factor for a prior criminal history. In fact, we agree that juvenile adjudications cannot be considered under the prior criminal history enhancement factor, as these adjudications are not the equivalent of a criminal conviction. *See State v. Recardo Dale*, No. W2003-02391-CCA-R3-CD (Tenn. Crim. App. at Jackson, Jan. 10, 2005). However, the juvenile adjudication factor is completely separate, and weight can be afforded to it by a trial court accordingly based upon the fact that the offenses were committed as a juvenile. The defendant's argument is misplaced.

## V. *Ex Post Facto* Provisions

Finally, the defendant contends that the trial court erred by "sentencing him pursuant to the pre[-]2005 sentencing laws . . . where he was resentenced twice after the June 7, 2005 Amendment to the '1989 Act.'" He contends specifically that the trial court committed constitutional error "by finding that he should be sentenced pursuant to the pre[-]2005 law where there was no basis upon the record demonstrating a consideration of the waiver as

outlined . . . and that this error manifested in the denial of his having the benefit of a presumptive (minimum) sentence relative to all counts in which he was convicted."

The defendant is correct that the 2005 amendments to our sentencing act, which became effective June 7, 2005, did provide that:

> Offenses committed prior to June 7, 2005, shall be governed by prior law, which shall apply in all respects. However, for defendants who are sentenced after June 7, 2005, for offenses committed on or after July 1, 1982, the defendant may elect to be sentenced under the provisions of the act by executing a waiver of such defendant's *ex post facto* protections. Upon executing such a waiver, all provisions of this act shall apply to the defendant.

T.C.A. § 40-35-210 (2006). The defendant contends that "the record, albeit otherwise unclear, ultimately reflects that the trial court chose to sentence the defendant as a Range I offender under the 1989 Act." He further asserts, as his main complaint, that the court should have had him execute a waiver because under the 2005 amendment, the presumptive minimum sentence for a Class A felony was the minimum of fifteen years rather than the twenty-year midpoint under prior law. He asserts that he should now be given that fifteen-year sentence.

Initially, while the defendant's argument regarding the presumptive minimum sentence under each version of the law may be correct, it ignores that under the amended law, the trial court is not restricted by *Blakely* and would have been able to apply any enhancement factors which it found applicable to increase the sentence beyond that presumptive minimum. However, regardless of possible sentences which the defendant might have received, the record is quiet clear in this case that the trial court did afford the defendant an opportunity to elect which law he chose to be sentenced under. The record reflects a discussion with the defendant's trial counsel, after which counsel explicitly stated that it was preferable for the defendant to be sentenced under prior law. The defendant may not complain about the decision which was reached. No relief is warranted.

## CONCLUSION

Based upon the foregoing, the case is remanded to the Montgomery County Circuit Court for entry of judgments of conviction which reflect the minimum presumptive sentence for each conviction. The determinations of the trial court are affirmed in all other regards.

_____
JOHN EVERETT WILLIAMS, JUDGE

-11-